## McKnight *et al. versus* Kreutz.

1. A provision in a coal-lease that the lessee "shall carry on the digging of said coal in such a manner as to do no injury to the surface of said land, and not to spoil the coal itself, and in order to carry this condition into full effect, parties of the first part reserve the power and full right to themselves to send, from time to time, an expert into the coal-pit for the purpose of examining the manner in which said business is therein done, and to get his approval thereto," is not a *condition*, for breach of which the lessors may enter, but a covenant, for breach of which the lessee is liable in damages.

2. Conditions that work forfeitures are not favourites of the law, and to make a provision such, must be manifested by a clear expression of intention.

3. Where in a lease causes of forfeiture are specified, it is not to be inferred that there are any grounds of forfeiture, not declared to be such.

4. The lessors having entered on the lessee for breach of condition, and he having brought ejectment to recover the possession, the burden was upon the lessors to prove a forfeiture.

5. The lease required that the lessee should make sworn monthly returns of coal mined, and pay the rent monthly. There was no evidence of such

[McKnight *v.* Kreutz.]

returns, and evidence of only three payments of rent. *Held*, that the law concluded that no returns were made, and that other rent was not paid.

6. The lessee agreed to mine 72,000 bushels each year, to pay a stipulated sum for each 100 bushels and to make monthly returns ; and, if he neglected to comply with the covenants for the payment of the rent, the lessors might determine the lease. The lessee having failed in these covenants, and the lessors having resumed possession, it should have been presumed that this had been done in pursuance of their right to terminate the lease, and it was error to submit to the jury whether the lessors had waived their right to terminate it.

7. The court below charged: "If the lessee did not pay for all the coal actually taken out from month to month, and the lessors let it stand over without saying or doing anything to enforce a compliance, or notice of an intention to do so, for more than two years, the lessee might conclude that they did not intend to insist on a forfeiture, and, if so, their remedy would be against him personally for rent in arrear." *Held*, that this was error.

ERROR to the District Court of *Allegheny county*, in which this was an action of ejectment by Louis Kreutz against William McKnight and others, heirs of Jane Ormsby, John Hartman and H. Burgwin.

The writ issued March 3d 1864, and July 15th 1865 a *nol. pros.* was entered as to H. Burgwin.

On the 21st of January 1861, the heirs of Jane Ormsby and Kreutz entered into an agreement under seal, to let to Kreutz all the "coals being in and under a piece of land," described in the agreement, "for four years from the 1st of April then next, Kreutz to have the right to open the coal-pit where it had been theretofore, and use as much ground as necessary for digging, taking out, &c., the coal, and generally * * carrying on said business" ; also right to erect on grounds near the pit's mouth a platform to put coal on ; also to fill up part of a run "large enough to turn wagons thereon," but to make culverts, &c., so as not to stop the water ; Kreutz to take as much coal as he chooses, not less than seventy-two thousand bushels per annum ; not to injure the surface of the land, nor spoil the coal ; the lessors reserving power, in order to carry this condition into effect, to send from time to time one expert into the pit to examine and to get his approval, and also reserving to the lessors the use of the surface of the land, Kreutz to pay 75 cents for every hundred bushels of coal, at the end of each month, and then produce a sworn statement of the amount, and "if Kreutz should neglect or fail to comply with the conditions now recited in regard to payment for said coal, parties of the first part shall have full power to dissolve, terminate and annul this article of agreement or lease entirely.

"In case if the coal under said land should be all taken out before the expiration of the four years agreed upon by the parties, of course the present lease contract shall be terminated and dissolved."

The lessors had the mine examined by two experts, in the pre-

[McKnight *v.* Kreutz.]

sence of Kreutz. They made this statement, dated October 14th 1861:—

"We are both decidedly of opinion that no more coal can be taken from said mine without serious danger and almost certainty of letting in the surface. There is no coal there, except in pillars, and they cannot be worked any more with safety. The water-entry which drains this coal, the pit worked by McCormick, and also the Ormsby coal is now in great danger of being blocked up by the pillars or walls giving way, where Kreutz has taken away the coal, leaving them insufficient."

On the 15th and 26th of July and 21st of September 1864, Kreutz paid rent, amounting in the whole to $43, and ceased working the pit in October of same year. There was no evidence that Kreutz furnished sworn monthly statements, or that he paid any more rent than that above stated. The lessors entered for condition broken.

Under the charge of the court (Hampton, P. J.), there was a verdict for the plaintiff.

The defendants' points and the ruling of the court below will sufficiently appear by the specifications of error following:—

1. The court erred in rejecting the defendants' offer in the following bill of exceptions:—

"Henry Gilleland, sworn.—I went into the pit several times, and examined the manner in which the mining was carried on. Kreutz was with me once; I went there at the request of Mr. Burgwin; I was engaged as superintendent of Ormsby Coal Works for a number of years; Kreutz had told me before, that he was about leasing the coal works, or had leased them; he said I was to superintend the works. Witness looks at paper with affidavit dated October 14th 1861, and says: I signed and swore to that paper, in connection with Mr. Sankey, and gave it to Mr. Burgwin."

Defendants offered the paper referred to by witness (the statement above mentioned).

The plaintiff objected that so far as it refers to Mr. Sankey, it is incompetent; and as to the witness, he is now on the stand, and competent to give evidence as to the facts therein contained, and while he may refresh his memory by the contents of the paper, it is incompetent as an independent piece of evidence.

By the Court: "Whether the paper would or would not be competent as secondary evidence in case of the death or absence of the witness, it is not necessary now to decide. I am of opinion, however, that the testimony of the witness in open court, as to the truth of the facts therein contained, after refreshing his memory, is the best evidence, and will tend more clearly to promote truth and justice than the statements it contains by itself could possibly do. The offer rejected."

[McKnight *v.* Kreutz.]

2. The court erred in rejecting the defendant's offer in the following bill of exceptions:

" The defendant's offer to prove by the witness (Gilleland) that the plaintiff, at the time he examined the mine, was carrying on his work in such a way, by taking out ribs and pillars of coal, as greatly to injure the surface by letting it in, and such danger was then imminent, and would be irremediable."

Plaintiff objected, for the reason that it is irrelevant and improper ; that the discretion, by the lease, is left to the plaintiff as to working the coal in the mines so as not to injure the surface ; and that not having injured the surface, the opinion of the witness is immaterial and improper.

3. The court erred in rejecting the defendant's offer of testimony in the following bill of exceptions:

" Defendant's counsel now proposes to ask the witness (Gilleland), whether Kreutz was carrying on the digging of the coal in such manner as to meet his approval, in regard to the injury which he might or might not do to the surface of the land, and whether such approval or non-approval was communicated to the lessors. This for the purpose of showing that the lessee had not complied with the condition that he was not to injure the surface of the land, and to show a right in the lessors to terminate the lease for breach of condition."

4. The court erred in refusing to charge as requested in defendant's first point, viz. :

" That, by the proper construction of this lease, plaintiff held his mining right upon condition that he should so exercise this right as not to injure or endanger the surface land, or obstruct the watercourse referred to."

5. In not charging as requested in defendant's fourth point :

" That plaintiff is not entitled to recover in this suit without proving to the satisfaction of the jury a substantial performance, upon his part, of the affirmative conditions upon which he held his lease, or a sufficient legal excuse for non-performance."

6. In not charging as requested in defendant's fifth point :

" That as the lessors were, by the lease, to retain possession of the surface land, no entry or claim of forfeiture was necessary on their part to avoid the lease, upon breach of condition by the lessee ; but the lease became, by such breach, *ipso facto* void, or at all events became so upon proof of any act of lessor's evincive of an intention so to treat it."

7. In not charging as requested in defendant's sixth point :

" That no entry or claim of forfeiture by lessors was necessary in order to annul or terminate this lease, should it be shown that the right to do so had accrued to them under its provisions."

8. In not charging as requested in defendant's eighth point :

[McKnight *v.* Kreutz.]

" That a discontinuance of mining operations by plaintiff, from October 1861 to March 1864, unless a sufficient legal excuse be shown, worked a forfeiture of the lease."

9. In not charging as requested in defendant's twelfth point:

" That plaintiff having once entered and possessed himself of the premises, and lessors being afterwards at the service of this writ, found in peaceable possession, and that possession being consistent with the provisions of the lease, viz. that the lease should terminate before the end of four years, in case all the coal were then taken out, the jury should presume, unless the contrary be proved, that the lease had thus terminated, and that lessor's possession was lawful."

10. In charging,

" It is not shown that he (Kreutz) rendered monthly accounts, sworn to, as provided in the lease. He paid money, however, for coal-rent, which was received as such without anything being said about the sworn returns; and if you believe the lessors intended, from this evidence, to waive their right to receive sworn returns, and did so waive their right, then they could not afterwards declare the contract dissolved, without giving notice to the lessee of their intention to do so."

11. In charging,

" If the lessee did not pay for all the coal actually taken out from month to month, in accordance with the terms of the lease, and if the lessors let it stand over without anything being said or done to enforce a compliance, or notice of an intention to do so for a period of more than two years, viz. from the fall of 1861 to the spring of 1864, he might conclude that they did not intend to insist on a forfeiture of the lease, and enter for condition broken; and if that were so, their remedy would be against him personally for the rent in arrear."

12. In charging,

" The burden of proof to show that the lessee had violated one or both these conditions (first, as regards sworn returns and payments; second, as regards the exhausting of all the coal) before the lessors entered, lies on them."

*H. Burgwin,* for plaintiff in error.—Was the provision in the lease, that the lessee should not injure the surface or spoil the coal, a *condition* on which the lessee held the mining right? The lease called it a " condition," and it was eminently proper that there should be such a condition. The work was out of sight of the lessee, and the surface far more valuable than the coal, and it could not have been in the contemplation of the lessors if the land was injured, that they should look for damages to an irresponsible party. Why employ an expert if they could not act on his report?

[McKnight *v.* Kreutz.]

To lay on the lessors to prove a breach as to monthly returns and payment of rent, would require them to prove a negative. If the lessors were plaintiffs, all that would be required of them would be to show the lease, and call on the lessee to show payment; much more ought this to be so when the lessee is the plaintiff.

When land is held on condition, on breach of condition the title is *ipso facto* void without entry or claim: Hamilton *v.* Elliott, 5 S. & R. 375; Davis *v.* Moss, 2 Wright 246; Shaeffer *v.* Shaeffer, 1 Id. 525; Co. Litt. 214 b.

The lessee being in default, could not take advantage of it, nor set up the lessor's forbearance as a waiver. In the cases cited, long periods elapsed before any intention was shown to take advantage of the breach.

Waiver must be established by an unequivocal act. The lessors being in possession, no act was necessary: Co. Litt. 218. But if there was a waiver for rent due up to October 1861, it is no waiver of forfeiture for that due afterwards: See Doe *v.* Bliss, 4 Taunt. 735; Blucher *v.* Smith, 13 Wend. 534; Jackson *v.* Allen, 3 Cow. 120; Kenrick *v.* Smith, 7 W. & S. 41. On breach of condition a lease is *ipso facto* void, and a subsequent recognition cannot give it continuance: Co. Litt. 215 a. The cessation of mining for two and a half years is a forfeiture, not merely evidence of it.

The lessors being found in possession at the end of three years, and this being consistent with the provision terminating the lease when the coal was exhausted, the presumption is, the coal was exhausted; besides, the evidence went to show that it was so.

*Woods,* for defendant in error.—(The Reporter received no paper-book of defendant in error.)

The opinion of the court was delivered, January 8th 1866, by

STRONG, J.—A very large number of errors have been assigned in this case, most of which are without any substantial foundation. A considerable portion of them rest upon the assumption that the estate demised to the plaintiff below was upon condition that he should so exercise his right as not to injure or endanger the surface of the land, or obstruct the watercourse. In our opinion, however, the assumption is not well made. There is nothing in the words of the lease that can by any just construction be regarded as making the tenure of the lessee dependent upon his compliance with any other covenants than those which relate to the rent. The utmost that can be made of the stipulation that the lessee should dig coal in such a manner as to do no injury to the surface of the land, and not spoil the coal itself, is that it constitutes a covenant, the breach of which may subject the lessee to liability for damages, but not to forfeiture of his estate. Conditions that work forfeitures are not favourites of the law, and nothing less than a clear expres-

[McKnight *v.* Kreutz.]

sion of intention that a provision shall be such, will make it a condition upon which the continuance of an estate granted depends. Here there is no such intention apparent. True, in providing a mode by which the stipulation might be enforced, the parties speak of it as a condition, but it is evident they used the word in a sense in which it is often used, that of understanding, agreement, or covenant. That it was not intended to be a cause of divestiture of the estate of the lessee, is plain from the fact that there is no declaration that doing injury to the surface or spoiling the coal should work a forfeiture, while in regard to breaches of other covenants there is such a declaration. Having expressed for what causes a forfeiture might be claimed, it is not to be inferred that there are any grounds of forfeiture not declared to be such. We hold then that the estate of the lessee was not made dependent for its continued existence upon his compliance with the requirement that the surface of the land should not be injured or endangered. Hence there was no error in refusing to affirm the defendants' first point, and none in rejecting the evidence described in the first, second and third bills of exceptions. The evidence offered was immaterial to the issue, if not inadmissible for other reasons.

Nor can the fifth and twelfth assignments of error be sustained. The lease gave to the plaintiff below the right of possession primarily for four years. If by non-compliance with the conditions of the demise, he had forfeited the term after it had been vested in him, that was a fact to be proved by the lessors who asserted the forfeiture. The question as to the mode of proof of non-compliance, or as to what was sufficient proof of it, is a different matter. To that the maxim "*de non apparentibus et non existentibus, eadem est ratio vel lex*," may be applied. The court was, however, not asked to instruct the jury what was evidence of non-payment of the rent, or what was evidence of failure to render sworn returns of the quantity of coal taken out each month. There seems to have been no evidence of any such returns, and therefore the law concludes none were made, nor was there evidence of any other payments of rent than those of July 15th, July 26th and September 21st 1861, and therefore no others were made. Nor could the jury, under the instructions of the court, have found any other, or that monthly statements were furnished, and we cannot presume that they did.

But the court should have affirmed in substance the sixth, seventh and eighth points presented by the defendants. The lessee bound himself to dig and remove from the land, at least seventy-two thousand bushels per annum, that is, each year of the term, and to pay for the same at the rate of seventy-five cents, for every hundred bushels of coal taken out, and to render sworn monthly returns, by which the rent due might be determined. And

[McKnight *v.* Kreutz.]

it was expressly stipulated that if he neglected or failed to comply with the covenants for payment for the coal, the lessors should be at liberty to determine the lease, and treat it as void. That he did not make such sworn statement, and that he did not annually take out and pay for seventy-two thousand bushels of coal, was conclusively established, and that the lessors had resumed possession was admitted by the ejectment. The possession of the lessors, in absence of proof to the contrary, should have been presumed to have been in virtue of their right to retake the possession and terminate the lease, and there was error in submitting to the jury to find that there had been a waiver of the right of the lessors to " dissolve, terminate and annul the lease." Conceding that the receipt of money on account of rent in the months of July and September 1861, was a waiver of the right to insist upon sworn statements of the quantity of coal removed, which is probably more than ought to be conceded, there was no evidence of any waiver of the right of the lessors to insist upon the payment for seventy-two thousand bushels per annum each year of the term. Yet from 1861 to 1864, the lessee paid nothing. He mined no coal; he paid for none. The lessors had a right therefore to treat the lease as a nullity, and their resuming the possession was thus treating it. So the jury should have been instructed, and they should not have been permitted to find that the rights of the lessors to resume possession in default of such payment had been waived.

It is probable the attention of the court was directed mainly to the default of the lessee in furnishing the sworn statement required by the lease. That was but a part of his duty. Though he may have been relieved from that, he was not relieved from the obligation to pay for seventy-two thousand bushels annually, without which payment the lessors had the right to declare the lease void. This it must be presumed they did.

These observations dispense with the necessity of noticing in detail the remaining assignments of error. The eleventh is sustained, and the instruction of the court to which exception is taken in the tenth, unless it was intended as applicable only to the fifteenth, for want of sworn statements requires qualifications. Under the evidence as it was presented the plaintiff was not entitled to recover.

The judgment is reversed, and a *venire de novo* awarded.