# CHARLESTON.

CORE *v.* THE NEW YORK PETROLEUM COMPANY.

Submitted June 9, 1902.   Decided December 13, 1902.

1. OIL LEASE—*Forfeiture.*
   To work a forfeiture of an oil and gas lease there must be a breach of a condition or covenant expressed in the lease; ordinarily a breach of an implied covenant will not work a forfeiture of the lease. (p. 281).

2. LEASE—*Forfeiture.*
   Where in such lease, causes of forfeiture are specified it is not to be inferred that there are other causes of forfeiture not declared in the lease to be such. (p. 283).

3. LEASE—*Implied Covenant—Damages.*
   Under such a lease, the remedy for a breach of an implied covenant is ordinarily not by way of forfeiture of the lease in whole or in part, but by an action for damages caused by such breach. (p. 283).

Appeal from Circuit Court, Pleasants County.

Bill by Bion L. Core against The New York Petroleum Company.   Decree for plaintiff and defendant appeals.

*Reversed.*

McLuer & McLuer, for appellant.

J. C. NOLAND, for appellee.

McWHORTER, JUDGE:

On the 27th day of July, 1889, Bion L. Core leased to Joseph S. Brown his farm containing seventy-seven acres, in consideration of fifteen dollars paid in hand and the stipulations, rents and covenants on the part of the said Brown to be kept and performed "For the sole and only purpose of boring, mining and excavating for petroleum or carbon oil and gas," and piping the same.   Which lease was for the term of two years from its date or so long thereafter as oil or gas should continue to be found in paying quantities.   Said Brown, his heirs and assigns, to deliver in the pipe lines one-eighth of the oil and a yearly rental of $200 for each and every gas well, and which lease contained the following provision:   "The party of

the second part agrees to, and within one month from this date, commence a test well for gas and oil in the vicinity of this farm and complete the same within two months thereafter, unavoidable accidents and delays excepted. Said second party to commence and drill a well on the within described-lands within nine months after the completion of said test well and to prosecute said drilling with reasonable diligence to its completion; he is also to pay to the first party a monthly rental of ten dollars in advance until said drilling is commenced. Failure of the party of the second part to make said payment will render this lease null and void." Which lease was assigned and transferred to the Brown Oil Co. The Brown Oil Co. assigned the same to Gilbert L. Watson, who assigned the same to Marcus Bettman and David Bettman. The said Bettmans assigned one-third undivided interest to Henry Goodkind. The New York Petroleum Co. purchased the said lease together with other territory known as the "Belmont Oil Field;" that under said lease two wells were completed about the early part of 1891, and which wells at the time of their completion produced considerable quantities of oil and have been pumped most of the time since but have run down in their production to a very small amount and at the time of bringing this suit were producing only from one to two barrels per day.

At the September rules, 1898, B. L. Core, filed his bill in the circuit court of Pleasant County against The New York Petroleum Co., a corporation, Joseph S. Brown, Brown Oil Co., a corporation, Gilbert L. Watson, Marcus A. Bettman, David Bettman and Henry Goodkind, claiming damages in the amount of ten thousand dollars because of failure and neglect and careless operations and failure to develop the property under the said lease by drilling other wells on said land and not protecting the lines of the same and holding the lease while the land was being drained by oil wells on adjoining lands, and praying for the cancelation of said lease, in case it should be found that oil was not being produced in paying quantities, and for damages for the neglectful and careless manner of operating said wells and for the non-production and drainage of said premises, and in case it should be ascertained that oil was being produced in paying quantities then for a decree that unless the defendant, New York Petroleum Co., should commence within a

reasonable time to be fixed by the court the drilling of more and other wells thereon for oil and gas in sufficient number to properly develop and protect the said land from drainage, that then so much of said leasehold should be canceled and annulled as should not be necessary to protect the two wells already on the land; that the said defendant company should be required to employ the best art and skill and should pump and operate the said two wells continuously and without cessation so as to produce from the said two wells all the oil obtainable therefrom and for general relief.

The defendant, New York Petroleum Co. filed its demurrer to the bill, stating the following grounds of demurrer: "That the same is not sufficient in law. Second. That as shown from the face of the bill, the complainant has full, complete and adequate remedy at law for the recovery of any damages which he alleges in his bill he has sustained in consequence of the matters and things therein alleged. Third. That the only allegation contained in the said bill which would give the complainant a standing in a court of equity, and which would cause him to be entertained by a court of equity when he has a complete and adequate remedy at law, is the allegation that the lease of this defendant is a cloud upon the title of complainant's property, and this has been so repeatedly decided by the Supreme Court of the State of West Virginia that a lease of the character of the one described in the complainant's bill, does not vest in the lessee any right, title or interest in the corpus of the property leased, but is simply a permit to search for and produce oil. Hence, that allegation when considered under the light of the law of the State of West Virginia does not give to the complainant the right to be heard or entertained in a court of chancery. For these and other causes of demurrer apparent on the face of the complainant's bill this defendant demurs thereto."

Which demurrer was averruled on the 20th of October, 1898, and the defendants were given leave to file their answer within thirty days from the rising of the court. On the 17th of January, plaintiff excepted to the answer which had been filed in the office on the 25th of October, 1898. Which exceptions were sustained and the defendant company given thirty days to file a better answer. An amended and supplemental answer was

filed by the said defendant company on the 8th of April, 1899, depositions were taken and filed in the cause by the plaintiff and the said defendant company. The cause was finally heard on the 20th day of June, 1900, upon the bill and exhibits, the answer and amended and supplemental answer of the said defendant company, the papers filed, the orders and decrees entered and upon the depositions taken and filed in the cause; the court ascertained, that the said lease had been executed by the plaintiff for the term of two years or so long thereafter as oil or gas should continue to be found in paying quantities; that the said plaintiff had executed the lease for the purpose of having the land developed for oil and gas; that the covenants contained in the lease had not been complied with on the part of the lessee and those holding under him and that sufficient wells had not been drilled on the land to develop the same for oil and gas as contemplated and provided for in said lease; and that the alternative relief prayed for in plaintiff's bill should be granted; and decreed that The New York Petroleum Co. should hold, subject to the terms and conditions of the lease of July 27, 1889, five acres of land around and including each of said wells which were being operated, describing how said lots of five acres should be surveyed and located; and the holding of said two tracts of five acres each, and either or both of them should be contingent upon continued finding of oil or gas thereon in paying quantities as provided in said lease, and that at any time that oil or gas should cease to be found in paying quantities upon either or both of said five acre tracts, the same should be surrendered up to the said plaintiff and the lease thereon entirely canceled; and decreed further that unless the said defendant company should commence with in thirty days the drilling of other and further wells on the remainder of said seventy-seven acre tract of land and should prosecute said wells to completion with all due diligence until—wells were completed on said farm the remainder of said seventy-seven acres of land should by operation of said decree become entirely free from the effect of said lease of July 27, 1899, and be canceled as to the remaining tract and surrendered to the plaintiff; and that he should on failure of defendants to comply with this decree hold the same free from any claim of the defendants or any of them, and "It is further adjudged, ordered and decreed that unless the said defendant,

The New York Petroleum Company, do proceed to drill and do drill and complete to the oil producing sand of that section a sufficient number of wells to fully develop the said seventy-seven acres of land for oil and gas, then in that case the oil and gas lease on all of said land, except a square of five acres surrounding each additional well that they have drilled and completed on said Bion L. Core's farm after the entering of this decree shall be canceled and surrendered up to the plaintiff, Bion L. Core, who shall hold the same free of the said oil and gas lease mentioned and set out in the papers of this suit. And it appearing to the court that the oil producing sand under said Bion L. Core farm, as shown by the two wells which have been drilled thereon, is what is known in the Pleasants County oil fields as the Berea Grit sand, it is adjudged, ordered and decreed that no well shall be completed on said farm, under the meaning and intent of this decree until such well has been drilled to and through said Berea Grit sand," and further decreed the payment of the costs of the plaintiff by The New York Petroleum Company. From which decree the said defendant company appealed.

The first assignment of error is the overruling of the demurrer to plaintiff's bill. Appellant claiming that plaintiff neither averred nor proved any equity; that if he had any cause of action whatever his remedy was at law and not in equity. It is not disputed, but even shown by the allegations of the bill, that the wells when completed "Produced considerable quantities of oil," which must have been in "Paying quantities." Under the authorities, whenever oil is discovered and produced under a lease of the character of the one in question, estate and property in the oil and gas underlying the premises is vested in the lessee and his assigns. In *Koch's* and *Balliet's Appeal,* 93 Pa. St. 434, the lessee had the exclusive right to mine the iron ore on lessor's land, one-sixth thereof to be paid to lessor. The mining was carried on for several years when the lessee suspended operations. Lessor filed his bill in equity to compel the lessee to proceed with the mining or to deliver up the contract for cancelation, and the court decreed accordingly and awarded damages. This was held to be error; that there was no jurisdiction in equity, as an action at law for breach of covenant would clearly lie. It will be observed on careful reading of the lease in

case at bar that there is but one provision for rendering the lease null and void or for its forfeiture and that is the failure on the part of the lessee or his assigns to make payment of the rentals provided for in it to be paid in monthly payments of "Ten dollars, in advance, until said drilling is commenced." There is no complaint that the lessee or his assigns failed to pay the rent provided for. In *Harris* v. *The Ohio Oil Co.,* 57 O. St. 118, it is held: "That to work a forfeiture of the lease there must be a breach of a condition or covenant which·is mentioned in the lease; that a breach of an implied covenant does not work a forfeiture of the lease; and that certain causes of forfeiture being specified in the lease others cannot be implied." It is there further held: "Under such a lease the remedy for a breach of an implied covenant is not by way of forfeiture of the lease in whole or in part, but by an action for damages caused by such breach." In *McKnight* v. *Kreulz,* 51 Pa. 232, it is held: That "Where, in a lease causes of forfeiture are specified it is not to be inferred that there are any ground of forfeiture not declared to be such." *Blair* v. *Peel,* 1 Pennypacker (Pa.) 247. *Ammons* v. *The South Penn Oil Co.,* 47 W. Va. 610, (35 S. E. 1004), was a cause in which the lease provided that the ·lessee should immediately begin to operate and .bore for oil and gas on the premises within sixty days and complete one well thereon in one year, and if oil be found in paying quantities then after the first well was completed lessee should immediately commence and drill other wells thereon as should seem necessary to protect the oil and gas in said land, and it is there held: "That the remedy for violation of said conditions was not by way of forfeiture of the rights of the lease to bore or drill for oil on the land or any part of it, but by action or proceeding for damages caused by such breach," and *Harness* v. *Eastern Oil Co.,* 49 W. Va. 232, (38 S. E. 662), was a case where the lease had been partially developed as in the case at bar when the lessors brought their bill to forfeit the lease and the Court held, (Syl. pt. 3): "Lessors remedy for failure on the part of the lessee to further develop the leased premises or to properly protect the lines thereof from drainage through wells on adjacent property is ordinarily by action at law for damages." That decision was based largely upon the late cases in 194 Pa. St. of *Colgan* v. *Oil Co.* and *Young* v. *Oil Co.* The same questions involved in

case at bar are fully discussed in the said *Harness* v. *Eastern Oil Co.*, and also the *Ammons-South Penn Oil Co. Case.* I deem it unnecessary to go over the same ground again.

Contract of lease in this case shows on its face that the premises were in an undeveloped and untested field. The lease provided that "The party of the second part agrees to and within one month from this date commence a test well for gas and oil in the vicinity of this farm," and then provides for drilling on the premises leased. In testing and drilling in the vicinity and on the premises the lessee and his assigns were entitled to use their own judgment in such development. The circuit court has not only attempted to decide how many wells shall be drilled upon the premises, but how deep and into what sands they shall be drilled, virtually depriving the operator of the exercise of any judgment or discretion in his operation of said premises, interpolating new duties on the part of the lessee and his assigns, thus creating a new contract between the parties in relation to the development of the property. In *Colgan* v. *Oil Co.*, cited, Justice Mitchell in writing the opinion of the court says: "So long as the lessee is acting in good faith on business judgment, he is not bound to take any other party's but may stand on his own. Every man who invests his money and labor in a business, does it on the confidence he has in being able to conduct it in his own way. No court has any power to impose a different judgment on him, however erroneous it may deem his to be. Its right to interfere does not arise until it has been shown clearly that he is not acting in good faith upon his business judgment, but fraudulently with intent to obtain a dishonest advantage over the other party to the contract. Nor is the lessee bound, in case of difference of judgment, to surrender his lease, even *pro tanto,* and allow the lessor to experiment. Lessees who have bound themselves, by covenants, to develop a tract and have entered and produced oil have a vested estate in the land which cannot be taken away on any difference of judgment. It is not within the jurisdiction of any court to oust the owner and forfeit the title to estates in that way, and the jurisdiction of equity to decree any specific act ·or declare forfeiture depends on fraud averred and fully proved."

The case of *Kleppner* v. *Lemon,* 176 Pa. St. 502, is a similar case to the one at bar insofar as it was its purpose to forfeit the

lease for non-development after the lessee had bored several wells on the premises and was producing oil in paying quantities. In which case the lessor succeeded in requiring certain wells to be bored upon the leased premises; but in that case it was shown that it was the express purpose of the lessee to secure the oil of the lessor through his wells on other adjoining tracts of land. To the opinion of the court in that case Justice Mitchell filed the following very vigorous dissent: "A lessee who covenants to pay royalty on production is undoubtedly bound in good faith to make proper effort to develop the land. But while the interests of the parties are the same in getting the largest production yet in some respects they differ. The lessee has to bear the cost of putting down wells, and his interest is to proceed carefully, with due regard to expense and probable returns, while the lessor's interest is to have search and experiment without regard to present cost. The decision in regard to such matters belongs primarily to the lessee. It is a proper subject for agreement, and when the parties have agreed what shall be done their rights are not subject to the judgment of any court to fix a different standard. If the parties to the present controversy had expressly stipulated that one well should be sufficient for the whole tract, no court would venture to enlarge the test by directing another to be put down at the lessee's expense, yet the covenant of the lease amounts to just that, as I understand the learned court below to admit. I would reverse this judgment as a flagrant violation of the liberty and sanctity of contracts by raising a purely *factitious* equity to enable the complainant now to make a better bargain at the defendant's expense than he chose or was able to make for himself at the time." In the opinion of the court in *Colgan* v. *Oil Co.,* it is said: "This is a bill in equity by lessor against lessee for specific performance of covenants, or in the alternative for forfeiture of the lease and also for an account. As the covenants are merely implied, and their extent depends altogether on oral evidence of opinions, the case for relief is wholly wanting in that precision and certainty of contractual duty which is necessary to sustain the ordinary chancery decree for specific performance. The jurisdiction of equity in a similar case was, however, sustained in *Kleppner* v. *Lemon,* 176 Pa. 502, and we do not now propose to question it. But that decision was on the

ground of fraud, the majority of the court being of opinion that the defendant was fraudulently evading his obligations to plaintiff while draining the oil from plaintiff's land through wells on adjacent territory. 'The findings show,' says Williams, J., 'that it is the expressed purpose of the defendant to secure Kleppner's oil through his wells on the Garlach and Stotler tracts of land.' The basis necessary to sustain the bill, therefore, is fraud, and that of course must be affirmatively and clearly proved." From which it will be seen that while the court apparently sustained the decision in the *Kleppner Case*, in order to do so it bases the jurisdiction of the court whot v on the question of fraud. In effect the case of *Kleppner* v. *Lemon*, by these two cases of *Colgan and of Young* v. *Oil Co.*, in 194 Pa. St., is overruled, especially insofar as it could affect the case at bar "Courts will not assume to make a contract for the parties which they did not choose to make for themselves." Beech on Modern Law of Contracts, s. 707; *County of Morgan* v. *Allen*, 103 U. S. 498 (515).

The decree is reversed and the bill dismissed.

*Reversed.*