# CHARLESTON.

UNITED FUEL GAS COMPANY *v.* FRANK A. SMITH *et al.*

Submitted April 17, 1923.   Decided April 24, 1923.

1. APPEAL AND ERROR—*Rule That Decree on Conflicting Evidence not Reversed Unless Clearly Wrong Applicable to Finding on Breach of Oil and Gas Lease Agreement.*

   In a lease for oil and gas the lessee agreed that after drilling the first well as provided, it would drill or cause to be drilled and utilized from time to time and at all times "such number of wells, considering whether the field is oil or gas, or both, as may be reasonably necessary and proper to develop the demised premises, and to protect the oil and gas in the same from being depleted or drained by any well or wells drilled elsewhere." By some six wells drilled on the leased premises and numerous others on adjoining lands the leased premises were clearly defined as gas and not oil territory, and upon the pleadings and proofs the circuit court on conflicting evidence held that there had been no breach of said covenant, and dismissed the lessor's cross-bill without prejudice. In such a case the general rule that the appellate court will not reverse the decree of the lower court unless clearly wrong, should be applied. (p. 653).

2. QUESTION NOT DECIDED.

   • For a breach of said covenant the said lease further provided that, this lease and the estates thereby created and all

rights and privileges of the lessee hereunder shall be forfeited and become null and void as to all the demised premises and every part thereof, except always that there shall be saved and reserved from such forfeiture a plat of ground around each well which may be producing oil or gas in paying quantities at the time of such forfeiture, which plat of ground shall be laid off in the form of a square around each such producing well as the center of such square, and which square shall contain ten acres, and if by reason of the proximity of two or more such wells said ten acre plats of ground interlock, all loss of acreage occasioned by such interlocking shall be borne by the lessee; and as to all parts of the demised premises which may be so saved from forfeiture all the terms of this lease shall continue and be in force, except such parts shall not thereafter be subject to forfeiture for failure to drill additional wells." The question whether a court of equity will enforce such a forfeiture for the breach of a condition subsequent discussed with reference to the decisions, but not decided, as not being necessarily involved. (p. 655).

Appeal from Circuit Court, Kanawha County.

Suit by the United Fuel Gas Company against Frank A. Smith and Nellie B. Tompkins and others. From a decree for plaintiff, defendant Tompkins, appeals.

*Affirmed.*

*Horan & Pettigrew,* for appellant.

*R. G. Altizer,* and *Mathews, Campbell & McClintic,* for appellee.

MILLER, PRESIDENT:

Upon the original bill the plaintiff obtained a preliminary injunction, which by the final decree appealed from was perpetuated, enjoining the defendants, Frank A. Smith, Frank H. Fleer and the Anna Oil Company, their agents and employees, and all persons acting under their direction or control from violating the terms of the working agreement, so-called, set up and exhibited with the bill.

The plaintiff, as the bill and proofs showed, owned the gas interests, and the defendants so enjoined were the owners of the oil interests, with the mining rights pertaining thereto, under a certain oil and gas lease executed by the defendant Nellie B. Tompkins, guardian, etc., to The Lorraine Company,

a corporation, covering five adjoining tracts, aggregating some 1355 acres, situated on Kelly's Creek in Kanawha County.

The defendants so perpetually enjoined have not appealed, and the only questions now presented are those arising upon the cross-bill answer of the appellant Nellie B. Tompkins, guardian of her infant son J. G. W. Tompkins, and as executrix of the last will and testament of J. G. W. Tompkins, deceased, the answer of the plaintiff thereto, and the issues joined thereon, with the depositions and proofs taken and filed in the cause. By the final decree the court dismissed the cross-bill, but without prejudice to the plaintiff therein, either in her own right or as such guardian or executor, to institute such suit or suits at law or in equity as she may be advised on account of any breach of the provisions of said oil and gas lease, or any default of the plaintiff United Fuel Gas Company as the owner of the gas rights, or of the owner of said oil rights, or their successors, in complying with the covenants, expressed or implied, in said lease, should any such default thereafter occur. The court further decreed that neither at the time of the institution of this suit nor at the time of the filing of the cross-bill had there been any default on the part of the plaintiff United Fuel Gas Company as owner of the gas rights, nor any default on the part of the Anna Oil Company as owner of the oil interests, in the performance of the obligations imposed upon the lessees under the terms of said oil and gas lease.

So that for the purposes of this appeal we need look only to the issues presented upon the said cross-bill. By her said cross-bill the appellant pleads and relies upon the terms and provisions of said lease and the covenants and agreements therein. She admits the several assignments thereof as alleged in the bill and the operations conducted thereon substantially as alleged in the original bill and the making of the said working agreement between the owners of the oil and the gas interests, but alleges that the asignments of said lease and the making of said working agreements were without her knowledge, consent or approval.

The relief of cancellation and forfeiture sought by appel-

lant is predicated on the theory, first, that the owners of said gas and oil interests, both in the drilling and failing to drill wells and develop the property as required by the lease, have breached their covenants, working a forfeiture of so much of the leased premises, according to paragraphs 7, 8 and 12 of said lease, as have not been developed; and, second, that by entering into the said working agreement the several owners of said oil and gas interests have committed a fraud upon her and her rights justifying a court of equity in setting aside as forfeited said lease in whole, and certainly to the extent provided in said paragraph 12 thereof.

By the third paragraph thereof the period of said lease, subject to its provisions, was to continue for the term of ten years from date and as long thereafter as oil or gas should be produced in paying quantities.

By the fourth paragraph the lessee covenanted and agreed to pay the lessor as rent until oil or gas should be found in paying quantities in the demised premises, and and until the lessor should receive from gas and oil the amounts of money thereafter mentioned, the sum of two hundred and twenty-five and 83/100 dollars per month payable in quarterly installments, but further providing that when in any month the sum or sums of money received by the lessor from the sale of the one-eighth ($\frac{1}{8}$) oil royalty and the royalty to be paid for gas as therein provided should both or either equal or exceed the sums of money to be paid for each quarter as land rent, then the lessee should thereafter pay no such land rent, and in any quarter in which the lessor should receive oil or gas royalty the lessee should have a proper credit for the money paid in advance for such quarter as land rental, and that if in any quarter the oil and gas royalties to which the lessor should be entitled did not equal the amount of the land rental for such quarter, then the payment of the land rent for such quarter should be payment and satisfaction of such oil and gas royalties.

By the fifth paragraph of the lease it is provided as a further consideration therefor that the lessee shall give to the lessor a royalty of one-eighth part of all the oil obtained from the demised premises, to be set apart free of cost in tanks or pipe lines to her credit as the lessor may elect, and

also to pay her as a royalty a sum of money at the rate of five hundred dollars per annum for each gas well on the demised premises so long as such well produces gas in paying quantities, payable without demand, in quarterly installments in advance, but the royalty on any gas well should not commence until gas produced is marketed or used by the lessee off the demised premises, or should be used thereon for manufacturing purposes other than for the lessee's operation under the lease. Free gas for the lessor for one dwelling on the premises was also provided for.

By said seventh paragraph of the lease the lessee agreed to commence a well on the premises within twelve months from the date thereof and to prosecute the same with diligence to completion, subject to accidents and delays beyond control, which was to be drilled to and through the "Big Injun" sand unless oil or gas should be found in paying quantities at a lesser depth. There is no claim in the bill or elsewhere that there was any default on the part of the lessee as to this covenant.

It is for the alleged breaches of the covenants contained in paragraph eight and the consequences provided for in paragraph twelve that appellant in her cross-bill relied for the relief prayed for. By paragraph eight the lessee, in addition to the first well provided for in paragraph seven, agreed that it would drill or cause to be drilled and utilized from time to time and at all times, without regard to the time fixed for commencing said first well, such number of wells, considering whether the field should turn out to be oil or gas, or both, as might be reasonably necessary and proper to develop the leased premises and to protect the oil and gas therein from being depleted or drained by any well or wells drilled elsewhere than on the demised premises.

Paragraph twelve provides in substance that if the lessee should fail in the performance of its agreements contained in said paragraphs seven and eight, "then this lease and the estates thereby created and all rights and privileges of the lessee hereunder shall be forfeited and become null and void as to all the demised premises and every part thereof, except always that there shall be saved and reserved from such forfeiture a plat of ground around each well which may be pro-

ducing oil or gas in paying quantities at the time of such forfeiture, which plat of ground shall be laid off in the form of a square around each such producing well as the center of such square, and which square shall contain ten acres, and if by reason of the proximity of two or more such wells said ten acre plats of ground interlock, all loss of acreage occasioned by such interlocking shall be borne by the lessee; and as to all parts of the demised premises which may be so saved from forfeiture all the terms of this lease shall continue and be in force, except such parts shall not thereafter be subject to forfeiture for failure to drill additional wells.''

The cross-bill in its specification of breaches by the lessee of said covenants, alleges (1) that during all the years which have elapsed since the date of the lease there have been drilled and completed but five wells on the entire property; (2) that plaintiff is advised that proper development of the property for gas would require one well for each ten acres, and that for oil, when the same is proven territory, proper development would require a much large number of wells; (3) that it appears from plaintiff's bill that it has wholly failed to develop the premises with any degree of diligence or in any manner which could be considered reasonable, and also that it does not intend to proceed with reasonable diligence to do so, but is intending to retard the development of the property.

And as showing further breaches by the lessee, the cross-bill alleges (a) that it has wholly failed to protect the premises from drainage by wells on adjoining territory; that within the last two years numerous wells have been drilled on adjoining territory in close proximity to the line of the leased premises, producing large quantities of gas; that in or near the town of Cedar Grove and at or near the southern portion of the leased premises there have been drilled within the last two or three years no less than twelve large wells, within distances from the line approximately, as shown on the plat filed, one within 40 feet, one within 45 feet, one within 160 feet, one within 135 feet, one within 850 feet, one within 700 feet, one within 800 feet, one within 1500 feet, and another within 2000 feet; and the bill on information and belief undertakes to charge the size or caliber of each of said wells; (b) that in July, 1918, a rich pool of oil was dis-

covered up Kelly's Creek about one and a half miles north of the leased premises, in the "weir sand," which the plaintiff believes extends to the leased premises, and that none of the wells drilled on the leased premises have gone to that sand and made a test of the property for oil therein.

And the further ground for relief alleged in the cross-bill is that by the said working agreement by which the parties thereto have stipulated to limit the drilling of oil wells within certain times and within certain distances from gas wells on the leased premises, they have committed a fraud on the lessor, justifying a court of equity on that ground in canceling the lease or decreeing a forfeiture thereof, except as provided in pargraph twelve.

The United Fuel Gas Company, plaintiff in the original bill, demurred to the appellant's cross-bill and also answered, denying that the making of the said working agreement, originally between The Lorraine Company and E. M. Burdette, under which the property is now being operated by the owners of the oil and gas interests, constitutes any fraud on the rights of the lessor, or that it was intended to do so or does limit or prejudice in any manner any right whatsoever of the said appellant or any person represented by her or having any  interest in the land  to which said  agreement relates; that the purpose of said agreement was to provide for the proper testing and development of said property for both oil and gas for the mutual benefit of the owners and the persons and companies interested in the lease.

The answer, with reference to the allegations of the cross-bill respecting particular wells drilled and alleged to have shown the presence of oil, says that in none of them was there developed any oil except a mere trace, not justifying operation for oil; and it is denied that said property was not tested for oil in the so-called "weir sand," but that on the contrary, one or two of said wells specified was drilled into that sand without developing oil justifying operation thereof.

By the eighth paragraph of the answer respondent specifically denies that its efforts to prevent the persons enjoined from drilling wells at locations near to previously drilled gas wells and where the absence of oil had been made apparent

was with the purpose or intention to hold the premises as a reservoir of gas for future supply and solely for its convenience, in total disregard of the rights of the owners of said land under the terms of said lease; but that on the contrary, its object and intention was and at all times has been to fully develop and utilize the natural gas under the premises for the mutual benefit of itself and the owners of said land by means of wells located upon the premises at such points that the gas can be developed and worked fully and freely without unnecessary and reckless expenditure.

Respondent then showed that it had expended the sum of $427,638.84 in constructing a pipe line some nineteen miles, from Clendenin to a point near the Tompkins land, largely for the purpose of gathering the gas from that land, though also for marketing the gas produced from other lands in that vicinity; that it had paid out on wells drilled under the contract $28,292.73; that it paid Burdette for the gas rights under the lease $22,500.00, and had paid to the lessor and appellant rentals aggregating $10,162.50; and that up to this time it had not marketed any gas from the premises or received any revenue therefrom, but on the contrary had sustained great loss of gas by permitting the owners of the oil interests to open up the gas wells on the premises to make further tests for oil.

It is further averred that the Tompkins land is in a sense on the outskirts of the gas developed area of said county, and that said land has only since the execution of said lease and the expenditures by respondent in building a pipe line, been brought within the reach of a market for the gas; that by the provisions of the lease for a high land rental the lessors have been fully protected until the royalties from the production of oil and gas equal the amount of such rental.

The answer then goes into a history of all the oil and gas wells in this and adjoining territory, showing that respondent owns or controls the production and operation of the wells, and denies that there is any substantial drainage by wells on adjoining tracts.

Respecting the said working agreement, it does no more than protect the owners of the oil and gas interests. The

record shows that there have been sufficient tests by the wells drilled on the premises and adjoining tracts to define the land covered by the lease as strictly gas territory, and being so, that a far less number of wells will be required to obtain the product than if it were oil territory, and that good business judgment and profitable operation would not justify the drilling of more wells than will be necessary to get the gas. The witnesses differ in their opinions as to the number of wells, ranging from one well on ten to one on 250 acres. The best opinion perhaps is that one well to the hundred acres in a light territory like that involved here would be nearer right than any other estimate.

Moreover, the evidence of the vice-president and general manager of the gas company is that in his judgment a sufficient number of wells has been drilled on the land to fully develop the property and define it as gas territory, and that until the company can utilize the same profitably good business judgment would be against drilling a larger number of wells, and that there has been no substantial drainage. A very pertinent fact to which our attention has been called as bearing on the equities of the case, is that at no time since the lease was executed has appellant complained of any lack of development, until this suit was brought and she filed her cross-bill, suggesting to counsel for the United Fuel Gas Company that she may have been inspired thereto by the owners of the oil interests enjoined herein from violation of the working agreement.

The jurisdiction of a court of equity to enforce a forfeiture for breach of a condition subsequent is denied by counsel for the United Fuel Gas Company, upon the authority of a number of our decisions, cited and relied on. We will refer to them later. But the question of first importance to be considered is, do the pleadings and proofs show such breach? The lease calls for no specific number of wells, oil or gas. What the lessee, by said eighth paragraph, agreed to do, in addition to the first well, was to drill or cause to be drilled and utilized from time to time and at all times, without regard to the time fixed for commencing the first well, "*such number of wells, considering whether the field is oil or gas, or both, as may be reasonably necessary and proper to de-*

*velop the demised premises, and to protect the oil and gas* in
the same *from being depleted or drained* by any well or wells
drilled elsewhere.''

The gas company contends that as the territory has by
the developments made been defined as gas and not oil land,
and as the parties to the contract must have contemplated that
the gas could be taken and marketed only as the lessee should
find a market therefor, and be able to produce it and market
it at a profit, considering the nature of that business, and
of which the court can take judicial notice, there has been no
breach in the judgment of the lessee; and that as no demand
was ever made for other wells until the cross-bill was filed,
equity should not undertake to decree a forfeiture for any
of the conditions subsequent. The court below, on conflict-
ing evidence, must by its decree be regarded as having found
the facts in favor of the gas company.

In most, perhaps in all, of our cases where plaintiffs have
sought to enforce forfeitures for breaches of covenants, express
or implied, to drill oil wells, no other consideration for the
lease or delay in drilling than the royalties of oil or gas re-
served has been provided for. In the case here a very sub-
stantial land rental is provided for, to continue until the
royalty for oil or gas, or both, equals the monthly rate, which
has been paid and has amounted to over $10,000.00. The
longer the gas is kept in the ground undeveloped, the longer
the life of the lease, and the greater the amount which the
lessor is likely to realize in the future. Of course the greater
the number of wells being operated at any time, the greater
the royalty for the time being will be paid to the lessor.
But the objects of the lease were the mutual benefit and profit
of both parties thereto. In the recent case of *Sands* v. *Holbert,*
decided at the present term but not yet reported, we reaffirmed
the familiar rule that the law favors the vesting of estates,
and that courts will always construe a stipulation in a deed
to prevent either the non-vesting or the defeasance of estates,
if possible.

As numerous decisions of this court cited by counsel hold,
there is always implied in every oil and gas lease a covenant
to drill the number of wells reasonably necessary to develop

the property and prevent drainage by operation on adjoining lands. *Jennings* v. *Carbon Co.*, 73 W. Va. 215; *Ammons* v. *Oil Company*, 47 W. Va. 610; *Oil Company* v. *Edgell*, 48 W. Va. 348; *Harness* v. *Oil Company*, 49 W. Va. 232; *Core* v. *Petroleum Co.*, 52 W. Va. 276; *Lowther Oil Co.* v. *Miller-Sibley Oil Co.*, 53 W. Va. 501; *Grass* v. *Big Creek Development Co.*, 75 W. Va. 719; *Carper* v. *United Fuel Gas Co.*, 78 W. Va. 433; Archer on Oil & Gas, 393-437.

In none of these cases, we believe, did the leases involved contain specific covenants to drill with forfeiture and provisions for setting off territory surrounding wells drilled. Whether such specific covenants add any force to the conditions beyond the covenants for the same work implied, we need not say for the purposes of this case. It is contended by counsel for the gas company that the obligations of the lessee are no stronger in the one case than in the other.

With respect to such implied covenants our cases hold that equity will not enforce a forfeiture unless upon grounds of abandonment by the lessee, or upon circumstances of fraud or great hardship. *Todd* v. *Manufacturers Light & Heat Co.*, 90 W. Va. 40; *Hall* v. *South Penn Oil Co.*, 71 W. Va. 82, and cases cited. In *Carbon Black Co.* v. *Gillespie*, 87 W. Va. 441, we held that provisions of a contract effecting a forfeiture or exacting a penalty are strictly construed against the party for whose benefit they were incorporated in the instrument; also by the sixth point of the syllabus, that, "If a covenant or condition subsequent on which a forfeiture clause is predicated is susceptible of two reasonable interpretations and has been performed agreeably to one of them, no forfeiture is incurred or suffered." In *Horse Creek Coal Land Co.* v. *Trees et al.*, 75 W. Va. 559, limited, of course, to the facts in that case, we held that equity will not enforce a forfeiture for the breach of a condition subsequent. In that case the lease provided no bonus or rental for delay in testing the lands for oil and gas. It did provide for a speedy commencement and diligent prosecution of drilling operation, and specified the time for drilling the requisite number of wells to develop the leased premises, and for a forfeiture for neglect or refusal to perform the terms and conditions so prescribed.

In this case, conceding the breach of the conditions, which we do not, and which as indicated must have been decided against the contention of appellant, a much stronger case is presented here for denying the relief prayed for than was presented in the Horse Creek case.

What the rights of the lessor under the lease involved reserved in the decree below may be, we need not decide, for the question is not necessarily involved.

For the reasons indicated we are of opinion to affirm the decree.

*Affirmed.*