S. A. HAYS *et al. v.* PARK BOWSER *et al.*

(No. 6866)

Submitted March 11, 1931. Decided March 24, 1931.

*J. D. Jones,* for appellants.
*C. M. Bennett* and *F. P. Moats,* for appellees.

HATCHER, JUDGE:

This is a suit for cancellation, complete or partial, of oil and gas leases upon land owned by plaintiffs and for an account of the gas taken therefrom by the defendant. The circuit court refused the relief prayed for, dismissed the bill without prejudice, and plaintiffs appeal.

The leases cover an oblong tract of 523 acres. They were given to the Eastern Oil Company in 1902-3 for a term of five years and as long thereafter as oil or gas should be produced by the lessee. Upon the completion of a well the leases vested in the lessee for the remainder of the term the exclusive right to drill further for oil and gas as the lessee *might wish.* There was no express covenant for development of the property. Between 1905 and 1910 the oil company drilled three wells close to the eastern border of the central portion of the tract. The wells form a triangle which embraces about 5 7/10 acres. All of the wells produced oil, and two produced ''casing head'' gas, also. In 1916, the oil company assigned its interest in the leases to defendant Park Bowser. Pipes were laid from the two gas producing wells to a pipe line owned by Bowser, which conducted gas to market. The flow of gas from these wells was found to be 15,840 cubic feet of gas per day in 1930, by a test made under adverse circumstances. This was the only test ever made. The wells are pumped nine hours a week for oil, during which operation gas from the wells is used to run the pump. The rest of the time the gas flows into defendant's pipe line and thence to market. As to the sufficiency of the gas to operate the oil pump, the defendant said: ''I was selling some gas to the Eastern Oil Company to operate the lease just before I purchased it. I assume that since I acquired them (the

wells) they have produced just about enough to operate the property." Another witness testified that in his opinion the flow from the wells was sufficient to operate the pump; without having to borrow any from defendant's pipe line. No actual test was made of the gas necessary to run the pump. The defendant testified that since he acquired the property, the market price of gas had averaged about six cents per thousand cubic feet. In 1930, however, he received 8.42 cents per thousand cubic feet. Numerous producing oil and gas wells were drilled on the several tracts surrounding the 523 acres, a number of years ago. They are referred to as "small wells". Since 1916 only one well has been drilled near the plaintiffs' land. The defendant never drilled but one well and that was profitless. This was done in 1919, for the purpose of offsetting a producing well 275 feet beyond the plaintiffs' southern boundary line. Defendant said: "I have aimed to take care of and operate the lease as field and market conditions would permit."

By a long line of concordant cases we are committed to the view that the implied duty of defendant to sink additional wells in this case depended on whether (a) the plaintiffs' land needed protection from drainage of oil and gas through adjoining tracts, or (b) operators for oil and gas of ordinary prudence and experience in the same neighborhood and under similar conditions had been proceeding successfully with the further development of their lands or leases; and whether such additional wells would likely have been to the mutual profit of both lessors and lessee. *Hall* v. *Oil Co.*, 71 W. Va. 82, 84; *Jennings* v. *Carbon Co.*, 73 W. Va. 215, 220-1; *Grass* v. *Development Co.*, 75 W. Va. 719; *Steel* v. *Development Co.*, 80 W. Va. 206, 213, etc.; *Todd* v. *Heat Co.*, 90 W. Va. 40, 46; *Allen* v. *Oil Co.*, 92 W. Va. 689. Drainage is not established by satisfactory proof. The evidence shows that the operators on adjacent tracts have made no material development for many years. There is no evidence whatsoever tending to show that sinking additional wells would likely have been to the advantage of the lessee. Consequently, the plaintiffs are not entitled at this time to a partial, much less complete, cancellation of the leases.

It is equally well settled, however, that equitable and legal remedies are concurrent in matters of account. *Grafton* v. *Reed*, 26 W. Va. 437, 439. Equity may entertain a bill on behalf of the owner of property against one entrusted with its operation, when a discovery is needed by the owner and he is entitled to an account. *Belcher* v. *Coal Co.*, 68 W. Va. 716, 719; *Swearingen* v. *Steers*, 49 W. Va. 312, 314; 5 Pomeroy Eq. Juris., (2d Ed.), sec. 2358; 2 Beach, Mod. Eq. Juris., secs. 839 and 845; 1 C. J., subject, Accounts and Accounting, sec. 68. The plaintiffs have shown clearly that a discovery of the quantity of gas marketed by defendant from their (two) wells is material to their suit, and that they are entitled to an accounting for the gas. Consequently, it was error to dismiss their bill. If the trial chancellor was of opinion that the evidence was not sufficiently developed in this respect, the cause should have been recommitted for further evidence.

The decree of the circuit court is accordingly reversed and the cause remanded.

*Reversed and remanded.*