MINNIE G. ADKINS *et al. v.* HUNTINGTON DEVELOPMENT & GAS COMPANY

(No. 7335)

Submitted November 1, 1932. Decided December 6, 1932.

(Rehearing denied March 27, 1933.)

*W. C. W. Renshaw,* and *Harold A. Ritz* and *B. J. Pettigrew,* for appellant.

*W. F. Damron,* for appellees.

Woods, Judge:

By this suit the lessors of a certain 112-acre tract seek either (1) the cancellation of a certain lease on the ground that the lessee company is fraudulently drawing and extracting gas therefrom, or (2) a further development of the property. The lessee company appeals from a decree requiring it to drill an additional well, with the possibility of a second, or payment of the usual royalty for two wells, and, in case of failure so to do, that the lease be cancelled as to all the property, with exception of 37-1/3 acres around the present producing well.

On February 2, 1916, W. G. Adkins and Minnie Adkins, his wife, executed to A. F. Black an oil and gas lease over their farm of 112 acres in Lincoln County for a term of ten years, the lease providing for the usual delay rental of $1.00 per acre, or $112.00 per year. Black assigned his lease to Huntington Development & Gas Company, appellant herein, which at that time owned and still owns a ten-acre tract in fee simple and the minerals under a 75-acre tract, both tracts joining the 112 acres on the west. In 1922, the Gas Company drilled in a gas well on its ten-acre tract, the location thereof being 40 feet from plaintiffs' property. The company is still marketing gas from this well. In 1925, when the ten-year lease had only a few months to run, the Gas Company, which had not drilled on the 112-acre tract, sought to have the lease thereon renewed. After repeated efforts, a three year extension, or renewal lease, was secured, the same providing for a delay rental of $75.00 per quarter, or $300.00 per year, until such time as a producing well was drilled. This $300.00 took the place of an offset well. Like the first, this three year lease did not require drilling at any specified time, the lessee, as before, having the option to pay the delay rental. W. G. Adkins died in 1926, and the property descended to his heirs at law, the present plaintiffs. Towards the end of the year 1928, the Gas Company, having failed in its efforts to secure a further extension, or renewal, from the heirs aforesaid, drilled in a paying gas well on about the center of the 112 acre tract, some 400 feet from defendant's boundaries. Since that time, the Gas Company has done nothing further by way of drilling offset or other wells on the property. It also appears that defendant maintains a pumping equipment at a point five miles distant, and through its

use the gas underlying the Adkins' tract is being extracted at a more rapid rate, both through the Adkins' well and that on defendant's ten-acre tract.

At the outset it should be noted that the plaintiff, by way of supplement to his original and amended bills, set up ownership of the well on what is known as defendant's ten-acre tract, by reason of information acquired in running certain lines preliminary to the taking of depositions in support of his major proposition of fraudulent drainage. The evidence introduced on behalf of both parties concerning the ownership of this well was so variant that we are not disposed to question the decision of the chancellor to the effect that it was actually on the land owned by the defendant. *First National Bank, etc.* v. *McCloud,* 112 W. Va. 537, 165 S. E. 799; *White* v. *Graham,* 112 W. Va. 451, 164 S. E. 664; *Robinson, Executrix, etc.,* v. *Robinson,* 112 W. Va. 39, 163 S. E. 633; *Linger* v. *Watson,* 108 W. Va. 180, 150 S. E. 525; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620. Hence, we will deal no further with the appellees' cross-error.

The appellant attacks the sufficiency of the pleading, as well as the chancellor's finding on the merits of the case.

As to the amended bill, appellant, in support of its demurrer thereto, claims (1) that equity has no jurisdiction; (2) that full and adequate relief may be obtained by an action at law; and (3) that equity has no jurisdiction to compel specific performance of implied covenants in a contract or lease; nor to decree total or partial cancellation and forfeiture of a lease except where fraud clearly appears in a most aggravated form.

Under our decisions, the lessee, upon the completion of a paying well, acquires a vested right in the oil and gas underlying the leased premises. *United Fuel Gas Company* v. *Smith,* 93 W. Va. 646; *Todd* v. *Light. & Heat Co.,* 90 W. Va. 40, 110 S. E. 446; *Steel* v. *American Oil Development Co.,* 80 W. Va. 206, 92 S. E. 410; *Hall* v. *South Penn Oil Co.,* 71 W. Va. 82, 76 S. E. 124; *McGraw* v. *Kennedy,* 65 W. Va. 595, 64 S. E. 1027; *Core* v. *Petroleum Co.,* 52 W. Va. 276, 43 S. E. 128. And having acquired such right, he may not arbitrarily refuse further development, for by virtue of the very nature of the lease, the subject matter thereof and the situation of the parties, there is always, in the absence of an express covenant,

an implied obligation on his part to drill the number of wells reasonably necessary to develop the property and prevent drainage by operation on adjoining lands. *Jennings* v. *Southern Carbon Co.,* 73 W. Va. 215, 80 S. E. 368; *Allen* v. *Oil Co.,* 92 W. Va. 689, 115 S. E. 842, 844; *United Fuel Gas Co.,* v. *Smith, supra.* The work of further development, in such cases, is referred to the sound judgment and reasonable discretion of the lessee exercised for the mutual advantage of the parties to the contract. *Allen* v. *Oil Co., supra.* While equity will not enforce a forfeiture of a vested estate (*Engle* v. *Oil Co.,* 100 W. Va. 301, 130 S. E. 491), it does recognize a lessor's right to a complete or partial cancellation of an oil and gas lease on the ground of abandonment and upon circumstances of fraud or extreme hardship. *Parish Fork Oil Co.* v. *Gas Co.,* 51 W. Va. 583, 42 S. E. 655; *Lowther Oil Co.* v. *Oil Co.,* 53 W. Va. 501, 44 S. E. 433; *Todd* v. *Light & Heat Co., supra; Hall* v. *South Penn Oil Co., supra; Jennings* v. *Southern Carbon Co., supra; Allen* v. *Oil Co. supra.* In the last cited case, Judge Miller, speaking for the Court, observes: "In both the *Hall* and *Todd* cases it was held that to avoid a demurrer the bill must state facts showing with reasonable certainty drainage in substantial quantities; and according to the *Jennings* case actual fraud on the part of the lessee depriving the lessor of the benefits of the oil so drained." The court, in the quoted case, was of the opinion that the demurrer was improperly overruled, since the bill failed to charge actual fraud or allege facts showing intent to abandon, justifying cancellation. While fraud was sufficiently alleged in the *Jennings* case, this Court, in considering the merits on a subsequent appeal, reversed a finding for plaintiff, and dismissed the bill, on the ground that the proof did not sustain the allegations. *Jennings* v. *Southern Carbon Co.,* 81 W. Va. 347, 94 S. E. 363.

In the instant case, the bill, in addition to setting out the facts heretofore mentioned, charges fraud on the part of the defendant company in denying plaintiffs' importunities for the drilling of additional wells to further test their land and to protect their premises from drainage through wells on contiguous lands in the production of which they also charge the company had full knowledge thereof, and had an interest therein, from which drainage it profited and was benefited;

that by reason of said drainage permitted by it, said defendant fraudulently refrained from and refused to make further effort to protect their land against the drainage, or to properly develop the premises for the mutual advantage of the lessors and the lessee, by drilling a sufficient number of additional wells thereon. It is further alleged that the defendant company, after the discovery of gas in paying quantities as aforesaid, fraudulently ignored its obligations and the implied covenants under the terms of said lease, and continued to drain the premises in greater volume by the use of its powerful pumping station, which tends to increase production of wells on adjacent premises and to drain the premises more speedily; compensation for which injury the plaintiffs allege is not ascertainable, and, therefore, not measurable in damages in an action at law.

It is apparent that the actions of the Gas Company, under the peculiar circumstances, as alleged in the bill, amount to a fraud against the plaintiffs, and call for the intervention of a court of equity. *Jennings* v. *Southern Carbon Co.*, 73 W. Va. 215, 80 S. E. 368.

We are next confronted with the question of whether plaintiffs have made a case on the merits. In this connection, the defendant company claims that drainage has not been shown with any degree of certainty; and that plaintiffs have failed to show that additional drilling either to protect against drainage or to fully develop the leasehold would prove profitable to the lessee as well as to the lessors.

Defendant company, in discussing the merits, assumes this to be primarily a case to enforce the implied duty of further development, and that it is under no obligation to continue the development until and unless it clearly appears that such further or continued development will reasonably be attended with profit or advantage to the operating lessee. *Hays* v. *Bowser*, 110 W. Va. 323, 158 S. E. 169; *Development Co.* v. *Howell*, 101 W. Va. 748, 133 S. E. 699; *Grass* v. *Big Creek Dev. Co.*, 75 W. Va. 719, 84 S. E. 750; *Hall* v. *South Penn Oil Co.*, *supra*. And, further, that the judgment of the lessee, in the absence of fraud, controls whenever there is any doubt or question concerning the reasonable success that will attend future drilling. But, as already indicated in our discussion

of the pleadings, the major emphasis is placed upon the fraudulent drainage of plaintiffs' land.

Several witnesses for plaintiffs testified as to drainage. G. M. Linkous, who has been interested in the gas business for the past five years, being the owner of a ¼ interest in five partnership wells drilled within 2-¾ miles of the Adkins farm, stated that he owns a 360 acre farm within one mile of the Adkins farm, with three producing wells thereon. While having no knowledge of the sands of either the well on plaintiffs' farm, or that on the defendant's ten-acre tract, this witness, on the question of drainage, testified: ''Well, I would say that if it was not draining now, it would shortly,'' adding, ''I don't know, think no man could tell just how far it would draw; that would depend on the sand, as being loose or hard sand.'' J. S. Pridemore, another witness, testified that he had been engaged in oil and gas production in Lincoln County for fifteen or sixteen years, having been interested in the drilling of some 100 wells. He owns a 1/5 interest in the two Sweetland wells about ½ mile to the south of plaintiffs' tract—one of these wells tubed in as ¾ million feet, the other at ¼ million. It was the understanding of this witness that the well on plaintiffs' tract and that on defendant's tract, were producing from the Berea sand. He stated that he knew nothing concerning the character of either of these wells, but that, in his opinion, the Adkins farm was underlaid with gas, and that the well on defendant's property was drawing gas from plaintiffs' tract, and that the well in the center of the latter was drawing some gas from defendant's 75 acre tract (some 400 feet distant). He also testified that if a well had been drilled at exactly the same distance from the boundary line as the well on defendant's 10 acre tract, it would have constituted a proper offset; but because of the fact that the well on defendant's tract was several times nearer, the plaintiffs were entitled to something for the difference in the drainage. A. F. Black, an oil and gas producer with twenty-two years' experience, testified that if the well on defendant's property and that on plaintiffs' had equal capacity for feeding gas into the line, the former would drain more from plaintiffs' than the latter would from the defendant's property. This witness had been interested in the drilling of 150 wells in

Lincoln County, four of which wells are located within ½ mile of the Adkins farm. The flow of three out of the four, at the time of their completion, ranged from ¼ to ¾ million feet per day, the same being drilled to the Berea sand. John Walls, experienced in gauging and blowing wells, stated that he had recently gauged the well on the ten-acre tract and found its line pressure built up ten pounds in five minutes and fifteen pounds in ten minutes, while the well in the center of plaintiffs' tract built up ten pounds in five minutes and twenty pounds in ten minutes; that the two Sweetland wells, about ¼ mile to south of plaintiffs' tract, increased their line pressure at about the same rate. He knew nothing concerning the production. W. C. Kingery, with ten years' experience in drilling wells, both for himself and others, had drilled four profitable wells within ½ mile of the plaintiffs' 112 acres. He stated that ''there is surely some drainage'' from plaintiffs' tract by the well on the defendant's ten-acre tract. And, in addition, the fact that defendant placed the well in the center of plaintiffs' tract is, in itself, strong evidence of the possible distance of drainage. One or two of the witnesses stated that in their opinion two or three additional wells would amount to a proper development of the plaintiffs' property, but there is nothing on this issue tending to show that such would be of mutual benefit to both lessors and lessee.

In view of the foregoing it would seem that there is a material drainage, and that the same is not directly offset by the one well drilled on plaintiffs' property. That both wells are profitable is evidenced by the fact that defendant is still operating them for gas. The fact that it has installed a pumping station is an admission of the profitable nature of the field from a production standpoint. And, according to the evidence, the use of the pump makes it possible to drain the territory from which the particular wells draw, and not only to deplete that under plaintiffs' tract through the well on defendant's tract, but to deplete the same more rapidly through the one well on plaintiffs' tract, for which defendant pays only the stipulated sum of $300.00 per year, so long as it is productive.

So, we must conclude that the defendant is in reality extracting gas from the plaintiffs' territory, and greatly de-

creasing the value thereof, while refusing to make adequate provision to protect the rights of the lessors.

It must be noted at this juncture that the defendant did not attempt to deny any of the testimony offered by plaintiffs on this point. It was content to stand on the technical ground that plaintiff had failed to make out a case. So, therefore, it would seem that the defendant's silence would amount to an admission of the truth and correctness of the whole of plaintiffs' testimony; and in considering the fact as to whether or not the wells in question are profitable gas wells, plaintiffs rely upon the aforesaid evidence produced by the said witnesses, that being all the evidence available in point, the defendant company being in possession of the details and not offering to disclose the same.

But, is the decree, as entered, proper under the proof? It requires the drilling of two additional wells on the property, the second on the contingency that the first is a producer, rather than the mere drilling of an offset well, with the option of paying $300.00 a year for each well in lieu of drilling, or the forfeiture of all of the property leased with the exception of twenty-five acres around the well on plaintiffs' tract. As already indicated, a lessor cannot require further development of the premises, after the lessee has acquired a vested interest in the minerals by the completion of a paying well, except upon proof to the effect that operators for oil and gas of ordinary prudence and experience in the same neighborhood under similar conditions have been proceeding successfully with the further development of their lands or leases, and the further fact that additional wells would likely inure to the mutual profit of both lessors and lessee. *Hays* v. *Bowser, supra.* This the lessors have failed to do. However, the allegations and proof show with reasonable certainty a fraudulent drainage in substantial quantities from the leased premises through the well on the adjoining ten-acre tract, which belongs to and is being operated by the lessee. Under such circumstances the lessee will not be heard to contend that the drilling necessary to protect the plaintiff's property must show a profit to it as well as the lessor. Therefore, the decree must be modified so as to require the drilling of an offset well, or the payment of $300.00 per year in lieu thereof, until such time as such a well

is drilled, or the lease abandoned, or in case neither is done, that the lease be cancelled as to all the property, with the exception of the designated acreage around the present well; and as so modified the decree will be affirmed.

*Modified and affirmed.*