663 S.E.2d 639

ST. LUKE'S UNITED METHODIST CHURCH; Mary Maxine Welch; and Jay–Bee Production Company, Plaintiffs Below,

Mary Maxine Welch, Appellant

v.

CNG DEVELOPMENT COMPANY; Tri County Oil and Gas, Inc; East Resources, Inc.; and Enervest Operating, LLC, Defendants Below,

CNG Development Company, Appellee.

No. 33527.

Supreme Court of Appeals of West Virginia.

Submitted April 16, 2008.

Decided June 12, 2008.

G.W. Morris, II, Weston, WV, Ira M. Haught, Harrisville, WV, Thomas J. Gillooly, Charleston, WV, Johanna Fisher Stewart, Morgantown, WV, for Appellant, Mary Maxine Welch.

W. Henry Lawrence, Amy M. Smith, Steptoe & Johnson, PLLC, Clarksburg, WV, for Appellee, Dominion Exploration & Production, Inc., successor to CNG Development Company.

ALBRIGHT, Justice.

Appellant Mary Maxine Welch seeks relief from the November 15, 2006, order of the Circuit Court of Ritchie County, granting the motion of Appellee Dominion Exploration and Production, Inc. ("Dominion") to dismiss those portions of Appellant's complaint relating to partial rescission in connection with an oil and gas lease dispute.[1] Maintaining that Dominion has failed to fully develop the leased property, Appellant seeks the equitable remedy of partial rescission as a remedy for the alleged underdevelopment of the leased property.[2] When Dominion sought to drill additional wells on the leased property during the pendency of this litigation, Appellant sought injunctive relief from the trial court to halt any further development of the subject property by Dominion.

---

1. *See* W.Va.R.Civ.P. 54(b).

2. Still pending before the trial court are claims through which Appellant seeks monetary damages in connection with Dominion's alleged underdevelopment of the leased property at issue.

Upon our careful review of the law in this area in conjunction with the actions taken by the parties, we conclude that the trial court should impose a reasonable time period during which Dominion may undertake efforts to further develop the leased property. If at the conclusion of that time period, Dominion has failed to commence additional drilling operations on the property, the trial court should proceed to take evidence to determine whether Appellant can prove either a breach of the implied duty of further development or that she has suffered extreme hardship due to the alleged underdevelopment of the leased property. If either breach of an implied covenant to develop or extreme hardship can be established, then the remedy of partial rescission may be utilized to prevent Dominion from continuing to hold onto the lease without meeting its obligation to explore, exploit, and develop. Accordingly, we hereby reverse the ruling of the trial court on the issue of partial rescission and remand this matter for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

Appellant and St. Luke's United Methodist Church ("St.Luke's")[3] each own a one-half undivided interest in the oil and gas that underlies an 850–acre tract of land in Union District, Ritchie County. The subject leasehold interests are governed by an oil and gas lease, referred to as the Flanaghan Lease, that was executed in 1898 between Zimry and Sarah C. Flanaghan and the Carter Oil Company. Appellant and St. Luke's are the successor lessors and Dominion is the successor lessee.[4]

According to Appellant, the three oil and gas wells that were drilled on the leased property are marginally productive.[5] Based on dissatisfaction with the development of the leasehold property, Appellant and St. Luke's executed separate but identical oil and gas top lease agreements[6] on June 1, 2002, and September 10, 2003, respectively, with Jay–Bee Production Company, Inc., ("Jay–Bee"). Each of those top lease agreements contains language providing that "[i]t is the intention of the lessee to clear title on this lease so that it may be drilled."

In an attempt to clear title on the lease to permit drilling by Jay–Bee,[7] a complaint was filed on December 31, 2003, by Appellant, St. Luke's, and Jay–Bee (hereinafter collectively referred to as "Plaintiffs") against CNG Development Company,[8] Dominion's predecessor. Through that complaint, Plaintiffs sought to have the Flanaghan Lease "forfeited, canceled, terminated and removed as a cloud upon the title to the Plaintiff's land" for failure to drill and develop the lease. No damages were sought through the complaint, only equitable relief.

Dominion filed a motion for summary judgment on December 3, 2004, wherein it argued that the three active wells on the leased property negated Plaintiffs' entitlement to equitable relief under the terms of the lease.[9] During the pendency of the suit below, Dominion undertook efforts to further develop the property subject to the Flana-

---

3. According to Appellant, St. Luke's entered into a settlement agreement with Dominion at some point in 2006. In its brief, Dominion represents that St. Luke's is still a party to the proceeding below as no dismissal order has been entered by the trial court.

4. Title to the leasehold interest passed from Carter Oil Company to Hope Gas to CNG Development Company to Dominion.

5. Those three wells are owned and operated by Enervest Operating, LLC ("Enervest") pursuant to a "farm out agreement."

6. As explained by Dominion, a "top lease" is the leasing by a subsequent lessee from the same lessors of a mineral interest currently under lease to another lessee. To enforce its rights under the top lease, Jay–Bee must defeat the lease of the original lessee-Dominion in this case. Jay–Bee cannot drill on the property covered by the Flanaghan Lease while Dominion still has a valid lease on the same property.

7. *See supra*, note 6.

8. Also named as defendants were Tri County Oil and Gas, Inc. and East Resources, Inc.; those parties were voluntarily dismissed by Plaintiffs on January 29, 2004.

9. The Flanaghan Lease provided for a primary term of five years followed by a secondary term continuing so long "as oil or gas is produced in paying quantities or the rental paid."

ghan Lease.[10] On more than one occasion, Plaintiffs thwarted these efforts by moving the trial court for a preliminary injunction to prevent additional drilling by Dominion.

After hearing argument on Dominion's motion for summary judgment on January 26, 2005, the trial court determined that Plaintiffs were not entitled to the remedy of forfeiture under settled principles of oil and gas law. Despite its grant of summary judgment to Dominion, the circuit court allowed Plaintiffs to file an amended complaint "to seek other relief that may be viable." In its summary judgment ruling of August 15, 2005, the trial court opined that Ms. Welch has "the right to seek enforcement of the implied covenants to fully develop the lease and as to the implied covenant to prevent drainage of the leasehold assets." Plaintiffs filed an amended complaint on February 14, 2005, through which they sought a complete or partial rescission of the oil and gas lease on the grounds of abandonment, fraud, and extreme hardship. As an alternative to seeking equitable relief in the form of rescission, Plaintiffs included a demand for monetary damages in connection with losses sustained due to past and future drainage from drilling operations on contiguous properties.

In response to the amended complaint, Dominion filed a motion to dismiss and strike Plaintiffs' demand for partial rescission, contending that this remedy is duplicative of the equitable remedies of forfeiture, termination, and cancellation, which were previously rejected by the trial court. Dur-

ing a bench trial proceeding on February 23, 2006, the trial court granted Dominion's motion to strike those paragraphs of the amended complaint relating to partial rescission.[11] Through its order entered on November 15, 2006, the trial court opined that "rescission is not a proper remedy where a remedy at law exists." While it acknowledged that rescission is employed in certain circumstances,[12] "the Court conclude[d] that plaintiffs have failed to plead facts to support such a remedy in this matter." [13] Specifically, the trial court found that Plaintiffs had not alleged fraud with the particularity required by Rule 9 of the West Virginia Rules of Civil Procedure or to meet the requirements for rescission; there was no evidence of lease abandonment; and there was no evidence of undue hardship.

■ In making its ruling, the trial court stayed the matter below to permit Appellant to pursue an appeal pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure.[14] Through this appeal, Appellant asks this Court to reverse the trial court's decision to dismiss those portions of her amended complaint relating to partial rescission.

## II. Standard of Review

■ As we held in syllabus point two of *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995), "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Accordingly, we pro-

10. Dominion claims that until the lawsuit was filed it had no notice of the fact that Plaintiffs were dissatisfied with the level of development undertaken on the leased property. Appellant responds to this contention by stating that it had no duty to ask for further development.

11. The specific paragraphs that were struck pursuant to the ruling were numbers 42(C), 42(D), 45(B), and 45(C).

12. Those circumstances include fraud, abandonment, and undue or extreme hardship.

13. As support for its ruling, the trial court cited the following cases: *Doddridge County Oil and Gas Co. v. Smith,* 154 F. 970 (N.D.W.Va.1907); *Adkins v. Huntington Dev. & Gas Co.,* 113 W.Va. 490, 168 S.E. 366 (1932); *Jennings v. Southern Carbon Co.,* 73 W.Va. 215, 80 S.E. 368 (1913);

*Hall v. South Penn Oil Co.,* 71 W.Va. 82, 76 S.E. 124 (1912); and *Core v. The New York Petroleum Co.,* 52 W.Va. 276, 43 S.E. 128 (1903).

14. Dominion argues that appeal is not proper pursuant to Rule 54(b) as the trial court dismissed a remedy, rather than an actual claim. With the dismissal of the rescission-related claims, the only potential remedy that remained was an award of monetary damages for past and future drainage on contiguous properties. Because potential monetary damages that arise from drainage-related issues are distinguishable from the claim for partial rescission in both scope and objective, we view the equitable and legal claims as separate in nature. Accordingly, we treat the trial court's ruling on the issue of rescission as the equivalent of a completely resolved claim, one that permits review under Rule 54(b).

ceed to determine whether the lower court committed error in dismissing that portion of Appellant's amended complaint that pertains to the equitable remedy of rescission.

### III.  Discussion

During oral argument, Appellant conceded that there has been continuous production on the leasehold property based on the operation of three existing wells.  In making that concession, Appellant acknowledged that the lease has continued to date based on the contractual provision that extended the original five-year term "as much longer as oil or gas is produced in paying quantities or the rental paid thereon."  Attempting to circumvent the seemingly perpetual nature of the Flanaghan Lease, Appellant relies upon an implied covenant of development as grounds for seeking the remedy of partial rescission.

In *Adkins v. Huntington Development & Gas Co.*, 113 W.Va. 490, 168 S.E. 366 (1933), this Court recognized the existence of an implied obligation for an oil and gas lessee to protect the leased premises from drainage resulting from wells placed on adjacent property.  Addressing the claim of lessors who sought to cancel a lease based on the fraudulent extraction of gas and the failure to drill offset wells to prevent drainage on the leased property, we explained that

> [u]nder our decisions, the lessee, upon the completion of a paying well, acquires a vested right in the oil and gas underlying the leased premises.  And having acquired such right, he may not arbitrarily refuse further development, for by virtue of the very nature of the lease, the subject matter thereof, and the situation of the parties, there is always, in the absence of an express covenant, an implied obligation on his part to drill the number of wells reasonably necessary to develop the property and prevent drainage by operation on adjoining lands.

113 W.Va. at 492–93, 168 S.E. at 367 (internal citations omitted).  Based on this reasoning, we held in syllabus point one of *Adkins* that "[i]n the absence of an express provision requiring the lessee to protect the leased premises from drainage by oil or gas wells on adjacent property, an implied obligation will be read into the lease to give such protection."  *Id.* at 490, 168 S.E. at 366.

In discussing the implied covenant or duty of development in *Adkins*, we stated:

> As already indicated, a lessor cannot require further development of the premises, after the lessee has acquired a vested interest in the minerals by the completion of a paying well, *except upon proof to the effect that operators for oil and gas of ordinary prudence and experience in the same neighborhood under similar conditions have been proceeding successfully with the further development of their lands or leases, and the further fact that additional wells would likely inure to the mutual profit of both lessors and lessee.*

*Id.* at 497, 168 S.E. at 369 (emphasis supplied).  Review of the evidence presented in *Adkins* compelled this Court to conclude that the lessors had failed to introduce sufficient proof to establish that the lessee had breached the implied covenant of further development.  *See ibid.*

Despite the lack of evidence to establish breach of an implied covenant of development,[15] there was sufficient evidence in *Adkins* that fraudulent drainage had been occurring in substantial quantities.  113 W.Va. at 497, 168 S.E. at 369.  As we explained, fraud is one of the three established grounds (abandonment, fraud, and extreme hardship) that allow complete or partial cancellation of an oil and gas lease.  113 W.Va. at 493, 168 S.E. at 367;  *see also United Fuel Gas Co. v. Smith*, 93 W.Va. 646, 656, 117 S.E. 900, 904 (1923) (observing that "equity will not enforce a forfeiture unless upon grounds of abandonment by the lessee, or upon circumstances of fraud or great hardship").  Based on the evidence of fraudulent drainage proffered in *Adkins*, the lessee was required to

---

15.  The evidence that was lacking appears to have been proof that the further development sought by the lessor(s) would "inure to the mutual profit of both lessors and lessee."  113 W.Va. at 497, 168 S.E. at 369;  *see Hall v. South Penn Oil Co.*, 71 W.Va. 82, 84, 76 S.E. 124 (1912) (discussing lessee's duty to sink additional wells after discovery of oil or gas as dependent upon "circumstances indicative of mutual profit").

drill an off-set well or make an annual payment in lieu thereof until such well was drilled or the lease abandoned. In the event that neither the offset well was drilled or the lease abandoned, the court directed that the remedy of partial cancellation would be invoked so "that the lease be cancelled as to all the property, with the exception of the designated acreage around the present well." *Adkins*, 113 W.Va. at 498, 168 S.E. at 369.

Responding to Appellant's demand for partial rescission, Dominion argues that the availability of monetary damages bars the use of the equitable remedy of rescission. In *Doddridge County Oil and Gas Co. v. Smith*, 154 F. 970 (N.D.W.Va.1907), the district court recognized that an oil and gas lessor's "remedy for failure on part of [the] lessee to further develop the leased premises, or to properly protect the lines thereof from drainage through wells on adjacent property, is ordinarily by action at law for damages, and not by way of forfeiture of the lessee's right to bore or drill for oil." *Id.* at 979. Iterating the well-established rule of disfavoring equitable remedies where legal ones are available, we articulated in *Hall v. South Penn Oil Co.*, 71 W.Va. 82, 76 S.E. 124 (1912):

> Failure or refusal, while occupying the lease and operating it, to drill additional wells, under circumstances imposing a duty to do so, makes the lessee liable in damages to the lessor, for which the remedy at law is held to be an adequate one by courts in all jurisdictions, and affords no ground for either partial or total cancellation or rescission, and this rule has been repeatedly asserted by this Court.

*Id.* at 84, 76 S.E. at 124–25; *accord* Syl. Pt. 3, *Core v. New York Petroleum Co.*, 52 W.Va. 276, 43 S.E. 128 (1903) ("Under such a lease, the remedy for a breach of an implied covenant is ordinarily not by way of forfeiture of the lease in whole or in part, but by an action for damages caused by such breach.").

The preference for legal remedies over equitable ones with regard to oil and gas lease disputes evolved as a natural result of the legal system "favor[ing] ... the vesting of estates" based upon the significant investment intrinsic to oil and gas exploration and development. *United Fuel*, 93 W.Va. at 655,

117 S.E. at 904; *see Brewster v. Lanyon Zinc Co.*, 140 F. 801, 814 (8th Cir.1905) (recognizing "large expense incident to the work of exploration and development"). Notwithstanding this leaning towards monetary damages, equitable relief has been awarded when the factual circumstances of a given case clearly compel an alternative remedy. Typically, the type of factual predicate that gives rise to the use of partial cancellation or partial rescission of an oil and gas lease occurs when, after an initial period of exploration and discovery, there is only nominal mineral extraction occurring on a limited section of the leased property. Often the lessor's motivation for seeking partial rescission of an oil and gas lease stems from drainage-related concerns due to drilling operations on adjacent properties, which may or may not be fraudulent in nature.

At the core of Appellant's claim for partial rescission is her contention that Dominion has violated the implied covenant of development. Stated otherwise, this covenant requires that "when the existence of either of these valuable mineral substances [oil and gas] in paying quantities becomes apparent from operations on the premises leased or on adjoining lands, the lessee shall drill such number of wells as in the exercise of sound judgment he may deem reasonably necessary to secure either oil or gas or both, for the mutual advantage of the owner of the land and of himself as operator under the lease; also for the protection of the lands leased from drainage through wells on adjoining or contiguous lands." *Jennings v. Southern Carbon Co.*, 73 W.Va. 215, 219, 80 S.E. 368, 369 (1913). Five years after discovery of a gas well that continued to produce in paying quantities, the lessor in *Jennings* sought relief for the lessee's failure to further develop her property and to protect the same from drainage-related issues. After examining the bill of particulars which demonstrated that the lessee was fraudulently extracting oil and gas by means of drilling operations on contiguous properties, this Court ruled:

> Thus the defendant Carbon company, under the cloak of an agreement, has, by its failure to perform the conditions of the lease, in effect and in fact intentionally

withheld development of plaintiff's lands, in direct violation and disregard of plaintiff's property rights in the oil and gas underlying her lands, the existence of one or both of which therein is reasonably assured from developments on hers and neighboring lands. Thus a situation appears wherein, by defendants' conduct, has occurred an impairment of valuable property, resulting in irreparable injury, and demanding a measure of relief not available at law.

73 W.Va. at 225, 80 S.E. at 372. Rejecting the trial court's ruling that the lessor's relief was limited to monetary damages, this Court ruled that the proper relief was either complete or partial cancellation of the lease. *Ibid.*

As further support for its position, Appellant argues that Dominion has violated the "prudent operator" standard first announced in *Brewster.* This oft-cited standard frames the issue in terms of objectively considering whether further development would mutually benefit the parties:

> The object of the operations being to obtain a benefit or profit for both lessor and lessee, it seems obvious … that both are bound by the standard of what is reasonable.
>
> . . . .
>
> … The large expense incident to the work of exploration and development, and the fact that the lessee must bear the loss if the operations are not successful, require that he proceed with due regard to his own interests, as well as those of the lessor. No obligation rests on him to carry the operations beyond the point where they will be profitable to him, even if some benefit to the lessor will result from them. It is only to the end that the oil and gas shall be extracted with benefit or profit to both that reasonable diligence is required. Whether or not in any particular instance such diligence is exercised depends on a variety of circumstances. … Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence,

having regard to the interests of both lessor and lessee, is what is required.

*Brewster,* 140 F. at 814.

In its seminal decision on the issue of development, the United States Supreme Court examined whether the lessee had failed to develop the leased tracts with reasonable diligence. *See Sauder v. Mid–Continent Petroleum Corp.,* 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255 (1934). The leased tracts at issue included a half section of 320 acres along with a separate 40–acre tract. Fourteen years after the lease was originally signed, only two offset wells had been drilled on the smaller tract; these wells were producing oil in "small but paying quantities." 292 U.S. at 277, 54 S.Ct. 671. Based solely on production from the two offset wells, the lessee maintained a right to hold onto the lease despite having no intention to conduct further drilling explorations. Applying the "prudent operator" standard, the high court reasoned in *Sauder*:

> The respondent's officers state that they desire to hold this tract because it may contain oil; but they assert that they have no present intention of drilling at any time in the near or remote future. This attitude does not comport with the obligation to prosecute development with due regard to the interests of the lessor. *The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land.*

*Id.* at 281, 54 S.Ct. 671 (emphasis supplied). Finding no adequate remedy at law, the Court in *Sauder* ruled that equitable relief was required and suggested that upon remand a provisional decree be entered by the trial court which would cancel the lease as to the 320–acre tract unless an exploratory well was drilled within a reasonable time, while allowing the 40–acre tract to remain under lease. *Id.* at 281–82, 54 S.Ct. 671.

This Court has recognized the unfairness of allowing a lessee to effectively tie up land when others stood ready to develop the

same. In *Steelsmith v. Gartlan*, 45 W.Va. 27, 29 S.E. 978 (1898), we discussed the relative positions of the lessee and lessor following the abandonment of exploration after an unsuccessful test drill:

> "An oil lease yields nothing to the landowner when not worked, and is an incumbrance on his land, tying his hands against selling or leasing to others; but, when idle, it costs the lessee nothing, and is valuable, or may prove valuable, if he can hold it waiting developments in its vicinity.... Holding on to a lease after ceasing search is often for purposes of speculation, the thing which a prudent landowner guards against. Forfeiture for nondevelopment or delay is essential to private and public interests in relation to the use and alienation of property."

*Id.* at 35, 29 S.E. at 980–81 (quoting *Munroe v. Armstrong*, 96 Pa. 307 [1880] ). Recognizing the inequity of allowing a lessee to hold onto a non-producing lease arrangement, this Court questioned in rhetorical fashion why a lessor should be permitted to continue under these circumstances:

> Then why should she [lessor] pay for it by a nonoperating and indefinite extension of the lease, to await the will and pleasure of the lessee, who claims the option to operate, abandon, surrender, or forfeit at his pleasure, while numerous others are clamoring for the privilege of diligent operation, and offering a large bonus therefor? Such a holding would be unconscionable, and contrary to both right and justice.

*Steelsmith*, 45 W.Va. at 36, 29 S.E. at 981.

■ We later reaffirmed this principle in *Parish Fork Oil Co. v. Bridgewater Gas Co.*, 51 W.Va. 583, 42 S.E. 655 (1902) in recognizing as universal the principle of law which discourages tying up and rendering unproductive the vast fields of mineral wealth, construes every contract and lease as to both lessor and lessee so as to best promote production, development and progress, and frowns upon every attempt to evade it as being in contravention of both good morals and public policy.

*Id.* at 595–96, 42 S.E. at 660. While both *Parish Fork* and *Steelsmith* involved issues of abandonment, the principle against tying up the land is nonetheless applicable to cases involving lack of development As we recognized in syllabus point three of *Parish Fork:* "When its terms will permit it, under the rules of law, an oil lease will be so construed as to promote development and prevent delay and unproductiveness." [16] *Id.* at 584, 42 S.E. at 655.

■ In suggesting that the remedy of partial rescission is the equivalent of a forfeiture based on the similarity of the grounds that are used to prove entitlement to both types of equitable relief, the trial court is mistaken. The analogy fails because the remedial effect of a forfeiture, as compared to a partial cancellation, is markedly different. Whereas forfeiture of an oil and gas lease is disfavored based upon concerns rooted in the high costs of exploration and development conjoined with the vesting of land-use rights, the remedy of partial rescission does not produce results as severe as a total forfeiture. A compromised result is effected with a partial rescission as the lessee is typically permitted to continue the lease as to the currently producing portion of the leased tract. Moreover, to deny a partial rescission where the facts compel the same would be to sanction the extended holding of land subject to a mineral rights lease with no correlative obligation to explore, develop, and produce: a result which is clearly not permitted under long-established principles of oil and gas law. *See Parish Fork*, 51 W.Va. at 595–96, 42 S.E. at 660.

---

**16.** Appellant looks to the statement of intent set forth in this state's oil and gas conservation statutes as additional support for her position that Dominion has breached an implied duty of development. *See* W.Va.Code § 22C–9–1(a)(1) (1994) (Repl.Vol.2005) (declaring as public policy of state and in public interest to "[f]oster, encourage and promote exploration for and development, production, utilization and conservation of oil and gas resources"). As we recognized in *Powers v. Union Drilling, Inc.*, 194 W.Va. 782, 461 S.E.2d 844 (1995), the administrative remedies set forth in chapter 22C of the West Virginia Code do not supercede or eviscerate the common law in this area. 194 W.Va. at 787, 461 S.E.2d at 849. Based upon the claims asserted by Appellant, this case is clearly governed by common law rather than statutory provisions.

■ Upon our review of this state's oil and gas law, it is clear that the equitable remedy of partial cancellation or partial rescission has long been recognized as a viable means of resolving various oil and gas lease disputes. *See, e.g., Adkins,* 113 W.Va. at 497–98, 168 S.E. at 369; *Jennings,* 73 W.Va. at 225–26, 80 S.E. at 372. To dispel any lingering confusion on the remedial use of partial rescission, we hold that a trial court may consider the equitable remedy of partial rescission in fashioning the relief to be awarded upon proof sufficient to establish a breach of the implied covenant of development in connection with an oil and gas lease dispute.[17] In ruling that rescission is not a proper remedy in the event a legal remedy exists, the trial court was misguided. Where monetary damages are inadequate as a matter of law, this Court has clearly approved the use of either partial cancellation or partial rescission in analogous cases. *See Jennings,* 73 W.Va. at 225–26, 80 S.E. at 372. In this case, Appellant argues that monetary damages are inadequate because they will not impel the objective of forcing Dominion to commence drilling operations.

While Appellant claims that it seeks to compel Dominion to conduct further drilling operations as support for its position that monetary damages are an insufficient remedy, its actions in this case suggest otherwise. The record in this case demonstrates that when Dominion sought to drill as many as eleven additional wells on the leased property after the market price for natural gas suddenly increased the potential profitability of exploratory drilling, Appellant sought injunctive relief to prevent such drilling efforts. While Appellant argues that it was too late at this time, the real motivation for its unwillingness to permit Dominion to conduct additional drilling efforts appears to be the top

lease arrangement it had with Jay–Bee. *See supra,* note 6.

■ We agree with Dominion's assertion that Appellant "should be indifferent as to whom drills additional wells." If indeed the issue is production, the identity of the producer should be irrelevant. Moreover, it is axiomatic that one who seeks equity must have clean hands. *See Pittsburgh & W. Va. Gas Co. v. Nicholson,* 87 W.Va. 540, 547–48, 105 S.E. 784, 787 (1921) (denying injunctive relief based on maxim that he who comes into equity must come with clean hands). Given the refusal of Dominion's efforts to drill and the threat of litigation to prevent those efforts, Appellant's hands are arguably lacking the requisite cleanliness of a litigant who seeks to enforce equitable rights.

■ In this case, it is clear that Dominion has expressed a willingness to develop additional drilling sites on the leased tract. Given the fact that Dominion already has a vested interest in that portion of the tract which is currently producing based on the three existing wells as well as a valid lease arrangement, it stands to reason that Dominion should be given an opportunity to further develop the property. On remand to the trial court, a reasonable period of time should be established to provide for such additional development efforts on the part of Dominion.[18] If the trial court finds that no significant additional development efforts have been pursued by Dominion at the conclusion of such reasonable period of time, then the trial court should proceed to take evidence on the issue of whether Dominion has breached the implied covenant of further development or whether evidence can be produced on the issue of undue hardship. We agree with the trial court's ruling that the record, as developed, does not suggest any evidence of undue hardship. Depending on the evidence that

---

17. The trial court appears to have assumed that it could only apply rescission to those claims grounded in fraud, abandonment, and undue hardship. The fact that those three grounds were relied upon in previous decisions as the basis for equitable relief does not limit the use of partial rescission to only those grounds; it merely indicates the type of proof established in those particular oil and gas disputes. *See, e.g. Jennings,* 73 W.Va. at 225, 80 S.E. at 372; *Adkins,* 113 W.Va. at 497, 168 S.E. at 369.

18. Obviously, Dominion has the option of foregoing any additional development of the leased tract should it no longer be interested in pursuing the same. In such event, however, it should give up the leased area that is not currently producing oil or gas to allow another entity to engage in exploration and development efforts on the currently undeveloped portion of the leased tract.

may be produced in the event of such proceedings, the equitable remedy of partial rescission is an appropriate remedy to be considered if either a breach of the implied covenant of further development or undue hardship can be established and the trial court is convinced that monetary damages alone are an insufficient remedy.[19]

Based on the foregoing, the decision of the Circuit Court of Ritchie County is hereby reversed and remanded for further proceedings consistent with the rulings herein.

Reversed and remanded.

---

**19.** Nothing in this ruling is intended to impact the pending claims Appellant has against Dominion through which she seeks monetary damages for the alleged underdevelopment of the leased tract including drainage-related losses.