# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Thomas W. Smith, Elizabeth Anne Smith,**
**Rachel Dickhut, Nancy Smith McCgregor,**
**Mary Smith Nelson, and Elizabeth Smith Arthur,**
**Plaintiffs Below, Petitioners**

vs) **No. 14-0136** (Monongalia County 11-C-457)

**Chestnut Ridge Storage, LLC, Oil & Gas Management, Inc.,**
**Penneco Oil Company, Inc., R.E. Fox & Associates, Inc.,**
**Fox Oil & Gas, Inc., and Samuel E. Shrader,**
**Defendants Below, Respondents**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Thomas W. Smith, Elizabeth Anne Smith, Rachel Dickhut, Nancy Smith McCgregor, Mary Smith Nelson, and Elizabeth Smith Arthur, by counsel Stephen L. Thompson, appeal the order of the Circuit Court of Monongalia County, entered on January 16, 2014, granting respondents' motions for summary judgment. Respondents Chestnut Ridge Storage, LLC, Oil & Gas Management, Inc., Penneco Oil Company, Inc., R.E. Fox & Associates, Inc., Fox Oil & Gas, Inc., and Samuel E. Shrader, by counsel James C. Wright, Karen E. Kahle, Amy M. Smith, Robert J. Hannen, and Daniel Tomassetti, filed a response. Petitioners filed a reply. Petitioners argue that the circuit court erroneously concluded that the language of an oil and gas lease and a subsequent "Gas Storage Addendum" waived respondents' implied duty to develop petitioners' gas estate for oil and gas production.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts and Procedural Background

This case involves a determination of the rights and duties under a 1987 oil and gas lease ("Lease") between petitioners (the lessors) and respondents (the lessees) and a 1993 addendum thereto, known as the Gas Storage Addendum. The pertinent provisions of the Lease state as follows:

1

1. It is agreed that this lease shall remain in force for a primary term of Three (3) years from the date hereof and as long thereafter as the said land is operated by Lessee in the production of oil and gas.

\*\*\*

15. It is agreed that Lessee may drill or not drill on said land as it may elect, and the consideration and rentals paid and to be paid hereunder constitute adequate compensation for such privilege.

The pertinent provisions of the Gas Storage Addendum state as follows:

WHEREAS, Lessor desires to expand the rights granted to Lessee under the Lease by adding thereto the exclusive right to store any kind of gas by pumping or otherwise introducing the same into sand or sands, substrata or horizon in and under said Lands described in the Lease, "the Lands" or "the Leased Premises," as the case may be, and the right to remove and transport same, as Lessee may see fit, through any well or wells on said Lands or other lands, and to use said Lands for protecting gas stored within and under lands in the vicinity of said Lands,

\*\*\*

2. Lessor grants to Lessee the exclusive right to employ any depleted oil or gas stratum underlying the Lands for the storage of gas, and may for this purpose reopen and restore to operation any and all abandoned wells on the Leased Premises which may have penetrated said depleted stratum, or may drill new wells thereon for the purpose of freely introducing and storing gas in such stratum and recovering the same therefrom.

\*\*\*

4. In full compensation for the storage and storage protection rights herein granted and in lieu of all delay rental, shut-in royalty or royalty due or to become due under the Lease for the right to produce or for the production of oil and gas from the sands, strata or horizons wherein gas may be stored or being protected as herein provided, Lessee covenants and agrees to pay Lessor, when no wells on the Leased Premises are utilized for the storage of gas, an annual rental of Eleven Thousand Four Hundred and Thirty Dollars ($11,430.00) payable annually in advance beginning with the next calendar year following the year in which the storage of gas has commenced under the terms of this agreement and continuing until the Leased Premises shall no longer be used for storage.

Petitioners are the owners of a one-half interest in the gas estate on approximately 4,572 acres located in Monongalia County and Preston County in West Virginia, and Fayette County in Pennsylvania. In 1987, petitioners' predecessors entered into the above-mentioned oil and gas

2

lease with Respondent Fox Oil and Gas, Inc. ("Fox Oil and Gas"). In 1988, Fox Oil and Gas assigned its rights under the lease to Respondent R.E. Fox and Associates, Inc. ("R.E. Fox"). On January 29, 1993, petitioners' predecessors granted R.E. Fox the additional right to store gas in any depleted oil or gas stratum on the leased premises. R.E. Fox assigned certain interests in the Lease to Respondent Samuel Shrader ("Shrader") in 1998 and to Respondent Penneco Oil Company ("Penneco") and Respondent Oil and Gas Management, Inc. ("OGM") in 2002.

In July 2007, Shrader, Penneco, and OGM entered into a partial assignment and bill of sale with Respondent Chestnut Ridge Storage, LCC ("Chestnut Ridge"), assigning Chestnut Ridge all of their right, title, and interest in the Lease, but to only the horizontal and vertical limits of the "Storage Prospect," which included more than 2,000 acres of petitioners' property. Chestnut Ridge intended to store gas within certain geologic formations or strata in the Storage Prospect. In December 2007, Chestnut Ridge applied to the Federal Energy Regulatory Commission ("FERC') for a certificate authorizing construction and operation of a natural gas storage field on the property. Over petitioners' objection, FERC granted the certificate, which was valid for two years. Thereafter, in 2011, Chestnut Ridge requested but was denied a three-year extension. Respondents state that it is undisputed that there is no FERC certificate authorizing gas storage on the subject property; that there is no operational storage field in the Storage Prospect; and no gas has ever been placed into the commercial storage in the storage field.[1]

Petitioners filed the present suit in July of 2011, alleging breach of contract and seeking declaratory judgment. They alleged that respondents were obligated to develop the Marcellus Shale within the Storage Prospect; that respondents breached the Lease and Gas Storage Addendum by obtaining the FERC certificate on undepleted portions of the property; and that respondents breached the agreement by refusing to develop or permit development of the Marcellus Shale in the Storage Prospect.

Chestnut Ridge, OGM, Penneco, and Shrader answered the complaint and filed counterclaims alleging breach of contract, civil conspiracy, slander of title, and sought declaratory judgment. Essentially, the counterclaimants challenged petitioners' opposition to the FERC proceedings and alleged a lack of good faith and fair dealing with respect to the parties' duties under the Lease and Gas Storage Addendum. Petitioners moved to dismiss the counterclaims, and following a hearing, the circuit court ultimately denied their motion by order entered September 24, 2013. However, prior to issuance of the September 24, 2013, order, the circuit court determined that it was necessary to interpret the Lease and Gas Storage Addendum as both parties viewed the language as unambiguous, but disagreed on the meaning. To that end, the circuit court stayed further discovery[2] pending its ruling on the meaning of the Lease and Gas Storage Addendum.

---

[1] Respondents also state that during this time, there has been gas production and payment of royalties from existing wells that were drilled into formations other than the Marcellus Shale in the Storage Prospect.

[2] Respondents state that by early 2012, the parties had engaged in extensive written discovery.

In its September 24, 2013, order denying petitioners' motion to dismiss the counterclaims, the circuit court made several findings that formed the foundation for its ultimate dismissal of the case on summary judgment. The circuit court found that the Gas Storage Addendum was a supplement to the Lease, rather than a change or modification; that the purpose of the Gas Storage Addendum was to grant the right of storage to the lessee; that the Gas Storage Addendum grants the lessee the right to store gas in any depleted oil or gas stratum; that the industry definition of depleted was contemplated by the parties; that neither the Lease nor the Gas Storage Addendum require the lessee to produce gas from the Marcellus Shale; that the Gas Storage Addendum conveys not just storage rights but storage protection rights as well; that in order to be used for storage of gas, a formation or stratum must first be depleted; that there is no requirement, express or implied, that all of the property must be depleted before it can be used for storage; that only the stratum to be used for storage must be depleted; and that the Marcellus Shale formation need not be produced or depleted if it is not being used as a storage area.

Based upon these findings, coupled with the fact that Chestnut Ridge intended for the Marcellus Shale to be used for protection of gas to be used in the storage field, respondents moved for summary judgment. By order entered January 16, 2014, the circuit court granted respondents' motions for summary judgment, concluding that the Lease and Gas Storage Addendum make development discretionary with the lessee; that the Lease and Gas Storage Addendum expressly set forth the duties and obligations of the lessee regarding drilling and storage; that there is no implied covenant to develop; that any storage of gas may take place only in depleted stratum; and that respondents have not breached the Lease or the Gas Storage Addendum. Petitioners now appeal to this Court.

**Discussion**

Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995); *See also* Syl. Pt. 4, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) ("Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."). "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *id.*

On appeal, petitioners raise four assignments of error, the first two of which we address together. First, petitioners argue that the circuit court erred in granting respondents' motions for summary judgment because (a) petitioners have a valid claim for declaratory judgment that the respondents do not have the right to employ undepleted strata for gas storage, and (b) petitioners have a valid claim for damages for breach of the Lease. Second, petitioners contend that the circuit court erred in holding that respondents do not have a duty to develop the Marcellus Shale or other formations on property because, contrary to the circuit court's holding, development is not "discretionary with the lessee." Because we agree with the circuit court that the language of the Lease renders development discretionary, i.e., the parties waived the implied duty to develop, we believe summary judgment was proper.

4

The crux of petitioners' argument is that the circuit court's ruling allows Chestnut Ridge to hold the property indefinitely for speculative purposes, which is contrary to public policy to "foster, encourage, and promote" oil and gas production and to "encourage maximum recovery of oil and gas." W.Va. Code § 22C-9-1(a)(1) and (3), in relevant part. Petitioners are correct that this Court has consistently held that an oil and gas lessee has an implied duty to develop the minerals under its lease. *See St. Luke's United Methodist Church v. CNG Dev. Co.,* 222 W.Va. 185, 663 S.E.2d 639 (2008); *Howell v. Appalachian Energy, Inc.,* 205 W.Va. 508, 519 S.E.2d 423 (1999). Respondents do not dispute this point; rather, they argued, and the circuit court agreed, that the duty to develop was waived by the language of the Lease itself. Paragraph 15 of the Lease states that "[i]t is agreed that Lessee *may drill or not drill* on said land *as it may elect,* and the consideration and rentals paid and to be paid hereunder constitute adequate compensation for such privilege." (Emphasis added). An implied covenant does not defeat the express terms of a contract, such as Paragraph 15. *See, e.g., Carper v. United Fuel Gas Co.,* 78 W.Va. 433, 89 S.E. 12 (1916). Moreover, it has been held that the implied duty to develop will not be applied when the parties to an oil and gas lease agree to payment in a form other than royalties. *See Jacobs v. CNG Transmission Corp.,* 565 Pa. 228 (2001). In the present case, the parties not only expressly waived the implied duty to develop, but the Lease and Gas Storage Addendum provide for alternative compensation for the use of the land by the lessee in lieu of royalties from production.

The case law presented by petitioners in support for finding an implied duty to develop involved neither the type of waiver language found in Paragraph 15 nor the concept of gas storage. Respondents point out that when the parties executed the Gas Storage Addendum in 1993, there was no viable caprock[3] for gas storage other than the Marcellus Shale. Respondents further note that no one could have contemplated producing natural gas in commercial quantities from the Marcellus Shale at that time. *See* J.M. Smith, *The Prodigal Son Returns: Oil and Gas Driller Return to Pennsylvania With a Vengeance: Are Municipalities Prepared?,* 49 Duq. L. Rev. 1, 4 (2011) ("Prior to the first Marcellus Shale well beginning production in 2004, it was believed that production from the Marcellus Shale would not be economically viable."). The record in this case demonstrates that the Marcellus Shale was intended as caprock for gas storage; that gas production from the Marcellus Shale would be inconsistent with its use as caprock; and therefore, petitioners' argument that respondents have a duty under the Lease to develop the Marcellus Shale for gas production is inconsistent with the terms of the Lease and the Gas Storage Addendum.[4]

Moreover, respondents agree with petitioners that only depleted strata may be used to store gas. However, petitioners are wrong to say that the lessee must deplete *all* strata within the Storage Prospect before it can be converted to a storage field. We agree with respondents that

---

[3] Caprock is "the impervious geological stratum that overlays the reservoir rock and retains gas or oil in the reservoir." 8-C Williams & Meyers, Oil and Gas Law C.

[4] Respondents note that the implication of an implied covenant to develop gas within the Storage Prospect, where none exists, would result in loss of all practicable and economic value of the Gas Storage Addendum. Respondent states that petitioners' unfounded allegation in this regard is the basis of respondents' counterclaims.

depletion only applies to strata where gas is to be stored, not to strata to be used for protection as caprock, such as the Marcellus Shale. The Gas Storage Addendum conveys the right to *protect* stored gas by providing expressly so in Paragraph 4, quoted above. Therefore, based on our review, we agree with the circuit court that summary judgment for respondents was proper.

Petitioners' third assignment of error is that the circuit court erred in ruling that the parties intended to adopt the "industry definition" of the term "depleted." Petitioners contend that the circuit court ruled that the parties intended the "industry definition," but did not actually provide the definition. Petitioners argue that there is no evidence in the record about what the parties intended in this respect, which is especially true given that petitioners are not members of any "industry." Respondents counter that the industry practice is to leave a certain amount of native gas, known as "cushion gas," in the strata to be used for storage. Petitioners do not offer a different definition; they simply challenge the circuit court's adoption of the industry definition. As respondents correctly state, the industry definition is the only logical definition. We see no error with respect to the circuit court's finding in this respect.

Petitioners' fourth and final assignment of error is that the circuit court erred in failing to grant their request for relief under Rule 56(f) of the Rules of Civil Procedure. Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Petitioners argue that their counsel submitted an affidavit describing the additional discovery needed before summary judgment should be considered, including depositions of respondents' representatives and consultants; documents in possession of Chestnut Ridge's former manager; and documents being withheld by Chestnut Ridge as privileged.

This Court reviews a circuit court's decision not to allow further discovery under Rule 56(f) under an abuse of discretion standard. *See Powderidge v. Highland Prop., Ltd.,* 196 W.Va. 692, 474 S.E.2d 872 (1996); *Elliot v. Schoolcraft,* 213 W.Va. 69, 576 S.E.2d 796 (2002). A party moving for relief pursuant to Rule 56(f) must satisfy the following:

> At a minimum, the party making the motion for a continuance must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier.

*Powderidge*, 196 W.Va. at 702, 474 S.E.2d at 882.

We find that petitioners were not entitled to relief under Rule 56(f). As respondents argue, reaching the decision on summary judgment in this case was primarily a matter of contract interpretation, coupled with the fact that the Marcellus Shale within the Storage Prospect was intended to be used a caprock for gas storage. Petitioner's Rule 56(f) affidavit fails to demonstrate how further discovery could affect these issues. Accordingly, the circuit court did not abuse its discretion by failing to grant petitioners' Rule 56(f) motion.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis