IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 23, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MELISSA L. BLEIGH,**
**Plaintiff Below, Petitioner**

**v.) No. 23-ICA-435**        (Cir. Ct. Gilmer Cnty. Case No. CC-11-2020-C-2)

**DOMINION ENERGY TRANSMISSION, INC., and**
**HG ENERGY II APPALACHIA, LLC,**
**Defendants Below, Respondents**

### MEMORANDUM DECISION

Petitioner Melissa L. Bleigh appeals a September 12, 2023, order from the Circuit Court of Gilmer County which granted Respondents Dominion Energy Transmission, Inc. ("DETI")[1] and HG Energy II Appalachia, LLC's ("HG") separate motions to dismiss. Respondents filed a joint response.[2] Ms. Bleigh filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case involves the determination of the rights and duties under a 1909 oil and gas lease and a 1952 lease modification between the parties' predecessors in title. Ms. Bleigh is the owner of the entirety of the oil, gas, and minerals within and underlying her property in Gilmer County, West Virginia, which she received via deed dated September 1, 2003. The land totals approximately 245 acres. Ms. Bleigh's acquisition of this property

---

[1] The Court notes that DETI is now known as Eastern Gas Transmission and Storage, Inc. ("EGTS") and that Respondents represent that EGTS is the successor lessee to the lease at issue. However, DETI is the named respondent in this action, and this Court will refer to DETI for clarity.

[2] Ms. Bleigh is represented by Scott A. Windom, Esq., and Rodney C. Windom, Esq. DETI is represented by Bridget D. Furbee, Esq., William J. O'Brien, Esq., and Stephenee R. Gandee, Esq. HG is represented by Seth P. Hayes, Esq., and Anna Williams, Esq.

is governed by existing agreements of record. Originally, the property was subject to an oil and gas lease dated September 27, 1909, which granted the right to develop all the oil and gas in and under the property ("the Lease"). The Lease was modified by a Modification of Lease dated May 23, 1952 ("Lease Modification").

Under the Lease Modification, Ms. Bleigh, as the property owner, is defined as the lessor and Respondents, as the natural gas companies, are defined as the lessee. The pertinent provisions of the Lease Modification state as follows:

> WHEREAS, Lessor by an indenture has granted to Lessee the exclusive right to inject, store and withdraw any kind of gas in the oil and gas bearing sand, strata, formation and horizon, known and designated as the "Berea Sand" in and underlying the premises described in the oil and gas lease above mentioned; and
>
> WHEREAS, Lessee is willing to continue said lease in full force and effect so long as it stores gas in the aforementioned sand or strata;
>
> NOW, THEREFORE, in consideration of the sum of One ($1.00) Dollar to the Lessor in hand paid by the Lessee, the receipt whereof is hereby acknowledged, and in further consideration of the mutual covenants and agreements herein contained, the parties hereto do mutually covenant and agree as follows, to-wit:
>
> 1. That said oil and gas lease, as heretofore modified and amended, shall remain in full force and effect so long as Lessee continues to store gas in said sand or strata under the leased premises; and the Lessee shall continue to pay the rentals and royalties provided for in said lease, as hereinfore modified and amended; provided, nevertheless, that this covenant shall not be construed as terminating said lease on the date when Lessee shall cease to store gas in said sand or strata under the leased premises if, by its terms, said lease would continue beyond said date.
>
> 2. Lessor agrees that, notwithstanding the provisions of this agreement, Lessee may, at time or times, exercise the surrender provisions of said lease, if Lessor demands further operations under said lease.
>
> 3. All of the terms, conditions, limitations and covenants of the lease as heretofore and hereby amended are hereby ratified, approved and confirmed and it is agreed that this modification of lease shall

extend to and be binding upon the heirs, personal representatives, successors and assigns of the parties.

In leases dated June 15, 2018, DETI assigned certain oil and gas leases, which included the property at issue. The complaint alleges there is only one well which is drilled and operating on Ms. Bleigh's property, and DETI identifies it as an underground storage well. The West Virginia Department of Environmental Protection identifies the well at issue as "non-producing" and Ms. Bleigh does not receive any production royalties from this well. The complaint further alleges that there are no offset or production wells on Ms. Bleigh's property.

Ms. Bleigh filed her initial complaint on January 8, 2020, and filed her First Amended Complaint, which is the operative complaint in this matter, on February 13, 2020. She attached the following documents to the First Amended Complaint: the 2003 deed conveying her the property; the Lease; the Lease Modification; and a June 18, 2018, document in which DETI partially assigned the oil and gas lease to HG. The complaint alleges breach of contract for breach of the implied covenant of development and seeks the equitable relief of a partial rescission. Ms. Bleigh alleges that respondents have an implied duty to reasonably develop the lease for the mutual advantage of the owner and to develop the lease and protect it from drainage through wells on adjoining and continuous lands. However, she alleges the use of her property for storage purposes with no mineral extraction does not represent a reasonable development of the leasehold and does not protect the lease from drainage. She alleges DETI has not undertaken efforts to further develop her property via traditional (vertical) exploration or horizontal drilling and has violated the prudent operator standard. Ms. Bleigh also alleges HG has taken the assignment of her property but has taken no steps to drill, develop, or produce, and, as a result, she is being deprived of expected royalties from production.

On March 16, 2020, DETI filed a motion to dismiss arguing the operative complaint fails to state any claim upon which relief can be granted. On May 18, 2020, HG filed its motion to dismiss based on the same arguments. Ms. Bleigh filed a response to both motions, and the circuit court held a hearing on August 24, 2020.[3] On September 12, 2023, the circuit court entered an order granting both respondents' motions to dismiss. The court recognized that there is an implied duty to develop minerals under a lease, but agreed with respondents that this implied duty does not defeat the express terms of the Lease Modification. The circuit court held that the Lease Modification clearly allows respondents to store gas under Ms. Bleigh's property, and its clear language contemplated the possibility that producing wells would not be developed. The circuit court further held that

---

[3] This Court was not provided a transcript from this hearing. The Joint Appendix states Respondents requested this transcript and would supplement, but this document was never provided.

partial recession is not appropriate because the terms of the Lease Modification defeat any implied covenant to develop. It is from this order that Ms. Bleigh now appeals.

This Court reviews a circuit court's rulings on a motion to dismiss under a de novo standard of review. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."). "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citation omitted). With this standard in mind, we turn to the arguments at issue.

On appeal, Ms. Bleigh asserts three assignments of error. First, she argues the circuit court erred when it found the express language of the Lease Modification negated any implied covenants to develop the oil and natural gas underlying her property. We disagree. The crux of Ms. Bleigh's argument is that neither the Lease nor the Lease Modification waived any implied covenants and that respondents have breached this lease and the implied covenants through their failure to develop her property for production.[4] Ms. Bleigh is correct that the Supreme Court of Appeals of West Virginia has consistently held that an oil and gas lessee has an implied duty to develop the minerals under its lease. *See St. Luke's United Methodist Church v. CNG Dev. Co.*, 222 W. Va. 185, 663 S.E.2d 639 (2008); *Howell v. Appalachian Energy, Inc.*, 205 W. Va. 508, 519 S.E.2d 423 (1999). Respondents here do not dispute this but instead argue that these implied covenants are not absolute and

---

[4] Ms. Bleigh also argues that this interpretation of paragraph one of the Lease Modification renders paragraph two meaningless because paragraph two indicates that future production of the property was contemplated. "As with other contracts, the language of a lease agreement must be considered and construed as a whole, giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract." *Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 436, 781 S.E.2d 198, 213 (2015) (quoting Syl. Pt. 3, *Moore v. Johnson Serv. Co.*, 158 W. Va. 808, 219 S.E.2d 315 (1975)). However, Ms. Bleigh's argument would require rendering the remainder of the Lease Modification meaningless. The terms of the Lease Modification, when read together, show that storage was the purpose of this modification. Allowing the language of paragraph two to alter the interpretation of the remainder of the Lease Modification is inappropriate and does not follow the standards outlined by the Supreme Court of Appeals of West Virginia in *Chesapeake Appalachia*, 236 W. Va. at 436, 781 S.E.2d at 213.

do not defeat the express terms of a contract. We agree. The plain language of the Lease Modification, when read as a whole, shows that storage was the purpose of this modification. The Lease Modification explicitly states that "Lessee [Respondents] is willing to continue said lease in full force and effect so long as it stores gas in the aforementioned sand or strata . . . ." Further, paragraph one of the Lease Modification supports this statement and states the Lease shall "remain in full force and effect so long as Lessee [Respondents] continues to store gas in said sand or strata under the leased premises; and the Lessee shall continue to pay the rentals and royalties provided for in said lease." This language shows the parties' predecessors intended for storage to occur and for Ms. Bleigh to receive payments.

This case is similar to the Supreme Court of Appeals of West Virginia's decision in *Smith v. Chestnut Ridge Storage, LLC*, No. 14-0136, 2014 WL 6607569 (W. Va. Nov. 21, 2014) (memorandum decision). In *Smith,* the leases at issue conveyed the right to store gas in the lease property and provided for compensation for this use. *Id.* at *2. The Court was clear that "the implied duty to develop will not be applied when the parties to an oil and gas lease agree to payment in a form other than royalties." *Id*. at *4. Here, like in *Smith*, the language of the Lease Modification does not expressly waive the implied duty to develop. However, the language of the Lease Modification makes clear that it will remain in effect if respondents continued to store gas. Ms. Bleigh does not allege that respondents have breached this lease by failing to store gas, and our Supreme Court of Appeals has clearly held that "[a]n implied covenant does not defeat the express terms of a contract." *Id.* As a result, we find the circuit court did not err when it found that the language of the Lease Modification prevails over the implied duty to develop.

For her second assignment of error, Ms. Bleigh argues the circuit court erred when it found that partial rescission was not appropriate. Again, we disagree. "A trial court may consider the equitable remedy of partial rescission in fashioning the relief to be awarded upon proof sufficient to establish a breach of the implied covenant of development in connection with an oil and gas lease dispute." Syl. Pt. 4, *St. Luke's United Methodist Church v. CNG Dev. Co.*, 222 W. Va. 185, 186, 663 S.E.2d 639, 640 (2008). As discussed above, the express language of the Lease Modification conveys the right to respondents to store gas under the leasehold estate, and Ms. Bleigh has failed to show a breach of the implied duty to develop. As a result, the remedy of partial recession is unavailable, and the circuit court did not err when it found this remedy was not appropriate.

Finally, Ms. Bleigh's third assignment of error asserts the circuit court erred when it dismissed this case under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure because it viewed the facts of this case in favor of respondents. Again, we disagree. As discussed above, the circuit court correctly interpreted both the Lease and the Lease Modification, which Ms. Bleigh attached to her complaint. The circuit court interpreted these documents in favor of respondents because the language of those documents favored respondents' position. A court considering a motion to dismiss "is required to accept all

the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff," but this standard does not require the court to rule in favor of the plaintiff. *See Conrad v. ARA Szabo,* 198 W. Va. 362, 369, 480 S.E.2d 801, 808 (1996). As discussed above, the circuit court did not err in its interpretation of the Lease and Lease Modification. Because Ms. Bleigh has failed to present any evidence to show that the circuit court's decision was in error, we affirm.

Affirmed.

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

6